# EXHIBIT A

JS 44 (Rev. 04/21)

Case 1:26-cv-06041 Document 1 Filed 05/27/26 Page 1 of 2 PageID: 1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, individually, and on behalf of all others similarly situated

## DEFENDANTS

EMR ADVANCED RECYCLING, LLC

**(b)** County of Residence of First Listed Plaintiff ___Camden___
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ___Camden___
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Cohen& Riechelson, Kevin Riechelson, Esquire
3500 Quakerbridge Road, Suite 203
Hamilton, NJ 08619 (609-394-8585)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent / ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce / ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) / ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) / ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☒ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application / ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)
Brief description of cause:
noxious odors release

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 5,000,000
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
May 27, 2026

SIGNATURE OF ATTORNEY OF RECORD
*Kevin Riechelson*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, individually, and on behalf of all others similarly situated, | ) ) ) ) ) | Case No. |
|  | ) | **CLASS ACTION COMPLAINT AND** |
| Plaintiffs, | ) | **JURY DEMAND** |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| EMR ADVANCED RECYCLING, LLC, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
| _____ | ) |  |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.     Plaintiffs, Sandra Wiles and Deandra Smith, on behalf of themselves and all others similarly situated, bring this putative class action against EMR Advanced Recycling, LLC (hereinafter the "Defendant"), which operates and maintains the scrapyard located at 1400 South Front Street, Camden, New Jersey and an associated facility located at 1500 South 6th Street, Camden, New Jersey (hereinafter referred to collectively as the "Facility").

2.     Through its operation and maintenance of the Facility, Defendant has released, and continues to release overwhelming and widespread noxious odors and air particulates in the form of fugitive dust, soot, smoke, debris, and fallout (collectively, the "Emissions") that invade Plaintiffs' residential properties, and similarly situated residential properties, causing property damages through private nuisance, public nuisance, negligence, and trespass.

### PARTIES

3.     At all times relevant hereto, Plaintiff Sandra Wiles is an individual citizen of New Jersey that rents and resides at her home located at 703A Ferry Ave., Camden, New Jersey.

1

4. At all times relevant hereto, Plaintiff Celestine Wallace is an individual citizen of New Jersey that owns and resides at her home located at 711 Walnut St., Camden, New Jersey.

5. At all times relevant hereto, Plaintiff Deandra Smith is an individual citizen of New Jersey that owns and resides at her home located at 1741 S. 4th St., Camden, New Jersey.

6. Defendant and its agents have at all times relevant hereto owned, operated, and/or maintained the scrapyard facility located at 1400 S. Front St., Camden, New Jersey and an associated facility located at 1500 South 6th Street, Camden, New Jersey.

7. Defendant EMR Advanced Recycling, LLC, is a foreign limited liability company organized under the laws of Delaware, registered to do business in New Jersey and identified through public sources as the owner, operator, and/or entity exercising control over the Facility.

8. Defendant is at least a citizen of Delaware through one of its members.

9. Defendant, including its predecessors and agents, maintains and operates the Facility and has exercised control and ownership over the Facility at all relevant times hereto.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

11. This Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there are 100 or more Class Members and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs. Additionally, under CAFA, Defendant is a citizen of a different state from at least one Plaintiff, establishing minimal diversity.

12. The Court has personal jurisdiction over Defendant, who has sufficient minimum contacts with the State of New Jersey, because it regularly conducts substantial business in New

Jersey through its operation and maintenance of the Facility, and Plaintiffs' claims arise through such contacts with the forum state.

13. Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because Defendant has purposefully availed itself of the laws of the State of New Jersey and it benefits by regularly conducting business through its industrial operations in the state.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events, acts, and/or omissions giving rise to Plaintiffs' claims took place in this judicial District, and because much, if not all, of the property that is the subject of this action is situated in this judicial District.

## **FACTUAL ALLEGATIONS**

15. Defendant owns and operates a scrap metal recycling facility located at 1400 South Front Street, Camden, New Jersey 08104 and an associated facility located at 1500 South 6th Street, Camden, New Jersey 08104.

16. Defendant's Facility receives ferrous and non-ferrous metal, vehicles, batteries, appliances, and aluminum.[1]

17. Defendant's Facility utilizes a hammermill shredder to break down larger scrap metal pieces for further processing.

18. Scrap metal recycling facilities like Defendant's process scrap by sorting and stockpiling materials, loading and conveying materials into a hammermill shredder that breaks them apart into a size suitable for further processing, then conveying shredded materials through various separating mechanisms to separate ferrous and non-ferrous metal using magnetic and/or

---

[1] https://us.emrlocal.com/yards/emr-Camden-scrap-metal

eddy current.[2] The recovered scrap metals are then later sold or further processed by mills, foundries, smelters, and/or metal brokers.

19. Auto and scrap metal shredders like Defendant's are a known source of excess emissions of air pollutants because of the significant amount of non-metal materials, such as plastics, paints, sealants, rubbers, and fluids contained in the scrap.[3] These non-metal materials are vaporized by the extreme heat generated by the shredding process, and are released as fugitive air emissions in the form of Volatile Organic Compounds (VOCs), particulate matter, and other hazardous air pollutants including lead, zinc, cadmium, mercury, and other pollutants.

20. Failure to remove and recover fluids and other potentially hazardous materials such as gasoline, diesel fuel, oil, antifreeze, brake fluid, transmission fluid, lead-acid batteries, vehicle air bags, capacitors, transformers, mercury-containing switches and light ballasts, tires, compressed gas cylinders, and refrigerant appliances may also create a risk of fires and explosions in the shredding, stockpiling, and recycling processes.[4]

21. Defendant's Facility is surrounded by residential properties.

22. Plaintiffs reside within the proposed Class Area.

23. On frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiffs' properties have been and continue to be physically invaded by noxious Emissions.

24. The noxious Emissions which entered Plaintiffs' properties originated from Defendant's Facility, where they are generated as a result of Defendant's scrap metal processing operations.

25. These fugitive emissions caused by Defendant's Facility have been and continue to be dispersed across public and private land in the Class Area.

---

[2] https://www.epa.gov/system/files/documents/2021-07/metalshredder-enfalert.pdf
[3] *Id.*
[4] *Id.*

26. A properly designed, operated, and maintained scrap metal recycling facility will adequately capture, remove, and dispose of noxious emissions to prevent the release thereof into the ambient air as fugitive emissions.

27. A properly designed, operated, and maintained scrap metal recycling facility will adequately capture, remove, and dispose of non-metal fluids and materials to prevent the vaporization and subsequent emission thereof into the ambient air as fugitive emissions.

28. A properly designed, operated, and maintained scrap metal recycling facility will not emit odor, dust, soot, smoke, debris, and fallout into the ambient air as fugitive emissions.

29. Defendant is required to control its Emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates fugitive Emissions to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available mitigation, elimination, and control systems at the Facility.

30. Defendant has failed to install, maintain, operate, develop, and/or implement adequate mitigation strategies, processes, technology, and equipment to control its Emissions from the Facility and prevent those Emissions from invading the homes and properties of the Plaintiffs and the putative Class.

31. Defendant's failures to prevent its offsite Emissions include, but are not limited to:

    a. Operating and maintaining inadequate systems for processing scrap metal;

    b. Operating and maintaining a scrap metal recycling process that inadequately captures, controls, and/or mitigates noxious Emissions;

    c. Failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air;

    d. Failing to develop and/or implement an adequate particulate prevention plan;

    e. Failing to utilize other odor, dust, soot, smoke, debris, and fallout elimination, and mitigation measures and technology available to Defendant;

f.  Failing to properly store and stockpile scrap and processed scrap metal and non-metals to prevent the release of Emissions into the ambient air;

g.  Failing to adequately enclose the stored stockpiles of scrap and processed scrap at the Facility to prevent the release of Emissions into the ambient air;

h.  Failing to adequately screen, remove, collect, and/or dispose of non-metals from its materials to prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal;

i.  Failing to adequately implement, maintain, and/or operate a fire suppression system at the Facility to prevent the release of Emissions into the ambient air;

j.  Failing to adequately screen, remove, collect, and/or dispose of batteries and other highly flammable substances from its materials to prevent combustion and prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal; and,

k.  Other failures that have yet to be discovered.

32.  Defendant has failed to follow proper scrapyard metal recycling practices to prevent the noxious Emissions from invading the homes and properties of the Plaintiffs and the putative Class.

33.  The Emissions from Defendant's Facility are noxious and offensive to the senses.

34.  On multiple occasions, Plaintiffs' properties have been physically invaded by noxious Emissions as a result of Defendant's repeated failures to properly maintain and operate the Facility, and as the result of fires and explosions occurring at Defendant's Facility.

35.  On January 29, 2021, a large fire occurred at Defendant's Facility shredder located at 1400 South Front Street releasing smoke and metallic odors into the ambient air. As a result of the fire, a neighborhood school, the Sacred Heart School, evacuated and closed due to the emission of smoke and odors.

36.  On February 27, 2021, Defendant's 1400 South Front Street shredder experienced a fire caused by "automotive fluff" or "automotive shredder residue," releasing smoke into the ambient air.

6

37. On February 28, 2022, nearly a year after the previously reported fire, a scrapyard fire at Defendant's 1500 South 6th Street location sent plumes of black smoke in the air.[5] The fire was reported to have begun in a pile of "shredded residue."



[Side view of February 28, 2022 fire at Defendant EMR Advanced Recycling, LLC's Facility][6]

38. On July 21, 2022, the City of Camden Fire Department received a report of a "small fire" at Defendant's 1400 South Front Street shredder.

39. On July 22, 2022, the City of Camden Fire Department received another report of a "facility fire" that "[m]ay have been a lithium battery that was on fire" at Defendant's 1500 South 6th Street location.

40. On October 18, 2022, an incident of "heavy odor" and smoke was reported to have come from Defendant's 1400 South Front Street shredder. Residents near Defendant's Facility were advised by a local nonprofit to contact Defendant's representative if they were "uncomfortable staying in [their] home tonight due to the smoke."[7] Residents were offered accommodations by Defendant to stay at a local hotel in downtown Camden.

---

[5] https://www.courierpostonline.com/story/news/2022/02/28/fire-emr-scrapyard-sends-smoke-billowing-into-camden-neighborhoods-air-pollution-recycling-industry/9321271002/

[6] *Id.*

[7] https://www.courierpostonline.com/story/news/local/2022/10/19/fluff-fire-ignites-emr-foul-smell-air-camden-nj/69573067007/

41.    On July 29, 2024, Defendant reported yet another fire at 1500 South 6th Street. General Counsel for Defendant, Michael Gross, provided a statement to the press that "The fire occurred in our light iron pile due to the suspected presence of a lithium-ion battery."[8]

42.    On February 21, 2025, a four-alarm fire occurred at Defendant's 1400 South Front Street shredder, which sent billowing black smoke into the ambient air of Camden for several hours.[9]



[Overhead view of February 21, 2025 fire at Defendant EMR Metal Recycling, LLC's Facility]

43.    As a result of Defendant's February 21, 2025, fire, more than 100 families in the neighborhood surrounding its Facility were dislodged and forced to evacuate the area.[10]

44.    The February 21, 2025 fire created a "thick smoke that enveloped the city and could

---

[8] https://www.tapinto.net/towns/camden/sections/police-and-fire/articles/emr-recycling-fire-quickly-extinguished-by-camden-firefighters
[9] https://www.cbsnews.com/philadelphia/news/lithium-ion-battery-caused-junkyard-fire-camden-emr-metal-recycling/
[10] https://www.camdencounty.com/mayor-negotiates-6-7-million-agreement-for-the-residents-of-waterfront-south-with-emr/

be seen as far as 15 miles away."[11] Camden City Commissioners issued a voluntary shelter in place order that was lifted on February 22, 2025 at noon. The Commissioners stated that the City Fire Department was still addressing smoke spots 20 hours after the fire began. In the public statement, the City further condemned Defendant's actions and that "This kind of fire can never happen again at EMR, and we are going to ensure that it never does."

45.     Following and as a direct result the February 21, 2025 fire, the City of Camden and Defendant entered into a Memorandum of Understanding on August 15, 2025.

46.     As part of the Memorandum of Understanding between the City of Camden and Defendant, Defendant was required to spend approximately $3 million installing a fire suppression system, improve its fire prevention measures, improve its emergency training, reimburse the Camden City Fire Department for damaged equipment, and cease all operations at its 1500 South Sixth Street scrapyard in Camden. Defendant was further required to commit an initial investment of $1 million to fund "essential needs" in the community and make annual donations of $450,000 to local community foundations.

47.     After investigating the February 21, 2025 fire at its Facility, Defendant stated that it was likely caused by a lithium-ion battery.[12]

48.     On February 26, 2026, another fire erupted at Defendant's Facility.[13] During the extinguishing of the fires, neighbors of Defendant's Facility were urged to avoid the area.

---

[11] https://www.camdencounty.com/statement-from-commissioners-regarding-the-fire-in-south-camden-city-at-the-emr-facility/https://www.camdencounty.com/statement-from-commissioners-regarding-the-fire-in-south-camden-city-at-the-emr-facility/

[12] https://www.cbsnews.com/philadelphia/news/lithium-ion-battery-caused-junkyard-fire-camden-emr-metal-recycling/

[13] https://www.msn.com/en-us/weather/topstories/firefighters-battle-another-fire-at-emr-junkyard-in-camden-nj-on-thursday/ar-AA1X9UsL?ocid=BingNewsSerp



[Overhead view of February 26, 2026 fire at Defendant EMR Metal Recycling, LLC's Facility]

49.     Defendant's Facility has caused numerous fires and explosions, which in turn have released noxious Emissions in the form of soot, smoke, debris, and fallout into the neighboring properties and have at times forced owner-occupants and renters of residential property within the putative Class Area to evacuate their homes.

50.     Excluding and in addition to the above fires and explosions, Defendant's Facility has released noxious Emissions as a result of its improper operation and maintenance of the Facility on occasions too numerous to list herein.

51.     Defendant's fires and Emissions were preventable through reasonable care and diligence.

52.     As a result of Defendant's negligent operation and/or maintenance of its Facility, including but not limited to the failure to collect, remove, and dispose of flammable materials and conditions within its scrap metal processing, Defendant has released noxious Emissions and has caused fires.

10

53. As a foreseeable, direct, and proximate result of Defendant's fires, noxious Emissions have physically invaded Plaintiffs' properties on numerous occasions, thereby causing damages.

54. As a foreseeable, direct, and proximate result of Defendant's failures to properly operate and maintain its Facility, noxious Emissions have physically invaded Plaintiffs' properties on numerous occasions, thereby causing damages.

55. Numerous households have contacted Plaintiffs' counsel documenting the Emissions they attribute to Defendant's Facility.

56. Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the fugitive Emissions, which have caused damages to neighboring properties.

    a. Plaintiff Sandra Wiles stated that "The air quality was really bad, couldn't use my air conditioning or open windows and it affected my asthma. Couldn't' take my pets outdoors for bathroom purposes. Had to stay with my sister for 3 days."

    b. Plaintiff Celestine Wallace indicated that "The air inside my home became unbearable at times, forcing me to take costly measures to protect my health and property. I have had to remodel parts of my home, install new windows, and invest in air purifiers in order to make the air inside my home safer to breathe. The situation has caused me significant stress, financial burden, and concern for my long-term health and well-being. No resident should have to live under these conditions or bear these costs due to environmental hazards in their neighborhood."

    c. Plaintiff Deandra Smith reported that "Soot has accumulated on step and roof. We were evacuated in Feb 2025 for the big fire had to stay at hotel."

    d. Putative Class Member Amarilys Miranda stated that "We usually smell burning metal in the mornings the smell is strong to the point no one should be outside more than 5-10 minutes at a time and when its warm outside its 10x worse. I noticed soot on our streets and on the cars at times when its dry/hot weather. I don't let my girls play outside when its bad!"

    e. Putative Class Member Mayra Tomas reported that "The odor was so strong that I had to stay indoors my porch had soot also my porch windows had to be cleaned."

57.    Defendant's well documented pattern of failing to control its Emissions is further demonstrated by the extensive administrative enforcement record of the Facility, verified by independent government investigations by the New Jersey Department of Environmental Protection (NJDEP).

58.    On July 23, 2020, Defendant was issued a notice of violation (NOV) by NJDEP for failing to obtain a preconstruction permit for a significant air contaminant source emission. The violation was described by NJDEP as follows:

> a.    "You installed a material handling source operation that emits one or more air contaminants directly to the outdoor air without first obtaining a Preconstruction Permit for the significant source operation. Specifically, you installed material handling equipment at the Kaighn Ave staging yard area of your facility, including but not limited to, front end loaders, industrial claw grabber, and industrial magnet that process in excess of 50 pounds of scrap metal (and/or non-metal scrap fluff) in any one hour."

59.    On December 7, 2020, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to store residues separately from recyclable material and in a manner that prevents run-off, leakage or seepage from the residue storage area into, on or around the soil of the residue storage area." Defendant was cited for the same violation again on December 9, 2020 and December 15, 2020.

60.    On December 8, 2020, Defendant was issued an NOV by NJDEP for failing to obtain a solid waste facility (SWF) permit prior to constructing and operating a solid waste facility on the Facility's premises, including failing to submit and obtain the Department's approval for a quality control plan and a sampling and analytical plan.

61.    On January 13, 2021, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to store residues separately from recyclable material and in a manner that prevents run-off, leakage or seepage from the residue storage area into, on or around the soil of the residue storage area."

12

62.     On March 12, 2021, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to ensure an adequate water supply and fire-fight equipment were readily available to extinguish any fires." Defendant's Facility and its related activities also "were not in conformance with municipal ordinances, including, but not limited to ordinances concerning ingress and egress, traffic patterns, parking, signage, operational hours, noise, dust, and structure height." Defendant also stored residues for more than six months, violating N.J.A.C. 7:26A- 4.1(a)2.

63.     On June 25, 2021, Defendant was issued an NOV by NJDEP for failing to obtain a solid waste facility permit prior to constructing and operating a solid waste facility on the Facility's premises. "Specifically, facility has stored an ASR pile on site for longer than 6 months. Photographic evidence was taken from inside and outside the facility." Defendant also stored residues for more than six months, violating N.J.A.C. 7:26A- 4.1(a)2.

64.     In relation to the fires caused by Defendant's Facility on November 29, 2020 and January 29, 2021, Defendant entered into a settlement agreement with NJDEP on October 25, 2023 and was assessed a $7,600 penalty and a $89,750 fine from the County Health Department Hazmat division.[14] Defendant's violations were described as:

    a.  "On January 29, 2021, you caused the release of one or more air contaminants, in a quantity or concentration which posed a potential threat to the public health, welfare or the environment or may have reasonably resulted in citizen complaints and failed to notify the Department immediately."

    b.  "On November 29, 2020, you caused the release of one or more air contaminants, in a quantity or concentration which posed a potential threat to the public health, welfare or the environment or may have reasonably resulted in citizen complaints and failed to notify the Department immediately."

    c.  "You permitted smoke and odors from the shredded material fluff pile fire on January 29, 2021 to be emitted into the outdoor atmosphere in quantities which resulted in air pollution."

---

[14] https://www.tapinto.net/towns/camden/sections/business-and-finance/articles/emr-fined-97k-after-january-fire-sent-heavy-smoke-into-camden-neighborhoods

65. Following the numerous fires, a dozen over the last five years, the State of New Jersey and the NJDEP filed a civil lawsuit on January 12, 2026, alleging public nuisance counts against Defendant and its other EMR affiliates for the frequent smoke, fires, and air pollution emitted from its Facility and other facilities in New Jersey.

66. Defendant's Facility has repeatedly emitted objectionable noxious odors and fugitive dust, soot, debris, smoke, and fallout that were detectable outside the bounds of its property.

67. The Facility's noxious Emissions have caused negative impacts to its neighbors, including lost use and enjoyment of private residential property and adverse impacts on residential property values.

68. Defendant has repeatedly been cited by regulators for failing to operate the Facility in accordance with its duty to control fugitive Emissions, discharging these Emissions into the surrounding community.

69. Defendant's noxious Emissions are continuing; Defendant has failed to cease the noxious Emissions, despite knowledge, and despite the Emissions being abatable with reasonable care and diligence.

70. The noxious Emissions from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

71. Plaintiffs and the putative class are a limited subset of individuals in Camden and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

14

72.     The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, recreational areas, dining, healthcare and social services, education, and ministry.

73.     Members of the public, including but not limited to business owners, employees, commuters, visitors, customers, patients, clients, students, and worshippers, have experienced and been harmed by the fugitive noxious emissions from the Facility into public spaces; however, unlike Plaintiffs and the putative class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of adversely impacted property values and/or loss of use and enjoyment of their private property.

74.     The invasion of Plaintiffs' property and that of the Class by noxious odors and air particulates has negatively impacted the value of and interfered with the use and enjoyment of those properties, resulting in property damages.

## CLASS ALLEGATIONS

### *Class Definition*

75.     Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons defined as:

**All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the following geographical area:**

> **Starting at Spruce Street and S 9th Street, proceed south on S 9th Street. At Sycamore Street continue east to S 10th Street. Follow S 10th Street south to Mechanic Street. Go east on Mechanic Street and then continue south on S 10th Street. At Bulson Street go west and continue to the railroad track following them northeast to Jefferson Street. Proceed east on Jefferson Street to the Delaware River. Follow the river front north to Spruce Street. Follow Spruce Street west to the point of origin.**

15

**The Class Area is further depicted in the map below:**



The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members").

76.    Plaintiffs further propose the following <u>Evacuation Subclass</u>, which they seek to represent, defined as:

**All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the Class Area that have been forced to evacuate their homes in response to fires at Defendant's Facility.**

77.    This case is properly maintainable as a class action pursuant to an in accordance with Federal Rule of Civil Procedure 23 in that:

    a.    The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b.    There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

16

      c.    Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

      d.    A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

      e.    The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

      f.    There are no unusual difficulties foreseen in the management of this class action; and,

      g.    Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

## A. Numerosity

78.    Based on available data, there are thousands of residential households within the Class Area and therefore is so numerous that joinder is impracticable.

## B. Commonality

79.    Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including, but not limited to the following:

      a.    Whether and how Defendant negligently and knowingly failed to reasonably maintain and operate the Facility to prevent offsite Emissions;

      b.    Whether Defendant owed any duties to Plaintiffs;

      c.    Which duties Defendant owed to Plaintiffs;

      d.    Which steps Defendant has and has not taken to control its Emissions through the maintenance and operation of its Facility;

      e.    Whether and to what extent the Facility's Emissions were dispersed over the Class Area;

      f.    Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Facility would result in an invasion of Plaintiffs' property interests;

g.  Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference under an objective legal standard; and,

h.  The proper measure of damages incurred by Plaintiffs and the Class.

80.  The availability of common proof as to a limited subset of the above questions of law and fact may otherwise permit issue certification under Fed. R. Civ. P. 23(c)(4).

## C.  Typicality

81.  Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

82.  The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly repair, maintain and operate the Facility.

83.  Class Members have similar injuries to the Plaintiffs as a result of the invasion of their properties by Defendant's release of Emissions causing damage to their properties.

## D.  Adequacy of Representation

84.  Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care.

85.  Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

86.  Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of Emissions originating from Defendant's Facility.

87.     Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from the offsite emission of air pollution from industrial facilities.

88.     Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

### E. Class Treatment is the Superior Method of Adjudication

89.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a.     Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudication with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

b.     Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

c.     The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and,

d.     The proposed class action is manageable.

90.     Further, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

91.     Notice can be provided to members of the Class by U.S. Mail and/or publication.

### CAUSE OF ACTION ONE – PRIVATE NUISANCE

92.     Plaintiffs restate the allegations of this Complaint as if fully restated herein.

93.     The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

19

94.     The Emissions which entered the Plaintiffs' and Class's properties originated from the Facility, which was improperly and unreasonably maintained and/or operated by the Defendant.

95.     The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

96.     The noxious Emissions which entered the Plaintiffs' and Class's properties originated from the Defendant's Facility, which is in close proximity to the Class Area.

97.     By failing to reasonably design, operate, repair, and maintain its Facility, the Defendant has caused an invasion of the Plaintiffs' and Class's properties by its Emissions on unusually frequent occasions that are too numerous to comprehensively list herein.

98.     The noxious Emissions invading the Plaintiffs' and Class's properties are indecent and offensive to individuals with ordinary sensibilities. The noxious Emissions substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and the ability to use and enjoy their properties. This includes, but is not limited to:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties;

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes; and,

e) Forcing Plaintiffs and Class Members to evacuate their homes entirely for extended periods of time.

99.     By failing to reasonably repair, maintain, and/or operate its Facility, the Defendant

20

has wrongfully, negligently, and knowingly created a foreseeable risk of harm and caused an unreasonable invasion of the Plaintiffs' and Class's properties by noxious odors and air particulates.

100. Defendant's nuisance is recurring and ongoing.

101. Defendant's nuisance is abatable.

102. By failing to reasonably repair, maintain, and/or operate the Facility, thereby causing noxious Emissions to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class's properties.

103. The Defendant owed, and continues to owe, a duty to Plaintiffs and the putative Class to prevent and abate the unreasonable interference with the invasion of their private property interests.

104. As a result of the forgoing misconduct by the Defendant, the Plaintiffs and Class suffered, and continue to suffer, damages to their properties as alleged herein.

105. The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's Emissions, which is ongoing and constitutes a nuisance.

106. Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

107. The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

21

## CAUSE OF ACTION TWO – PUBLIC NUISANCE

108.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

109.    Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

110.    Plaintiffs and the putative class are a limited subset of individuals in Camden County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

111.    The Emissions that entered Plaintiffs and the Class's properties originated from Defendant's Facility, which is in close proximity to the proposed Class Area.

112.    The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, dining, recreation, healthcare, education, and ministry.

113.    By failing to reasonably operate, repair, and/or maintain the Facility, Defendant has caused an invasion of Plaintiffs' property by noxious Emissions on frequent occasions that are too numerous to individually list herein.

114.    The noxious Emissions that invade the Plaintiffs' and the Class's properties are indecent and offensive to the Plaintiffs and Class, and they are indecent and offensive to individuals with ordinary sensibilities. The noxious Emissions substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and their ability to use and enjoy their properties. This includes, but is not limited to:

    a)  Forcing Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

    b)  Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties;

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes; and,

e) Forcing Plaintiffs and Class Members to evacuate their homes entirely for extended periods of time.

115.    Due to the Defendant's Facility Emissions, the Plaintiffs and the Class have suffered, and continue to suffer, special harm relating to the use and enjoyment of their lands and properties, and decreased property values.

116.    Separate and apart from the private property damage incurred by the Plaintiffs and the Class, the Defendant's Emissions have substantially interfered with rights common to the general public, including the right to breathe clean air.

117.    The injuries to the Plaintiffs' and Class's properties and the harmed rights associated with those properties are separate and different in kind from the harm caused by Defendant to the public at-large and/or other private individuals not within the Class definition.

118.    As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

119.    The damages suffered by the Plaintiffs and the Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their land and property, and decreased property values, which are not harms suffered by the general public.

120.    The general public is also impacted by the Facility's noxious Emissions when they work, worship, commute, study, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property or adversely impacted property values. The harm to the general public is separate and apart from the harm to private property experienced by Plaintiffs and the Class.

121.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious Emissions, which is ongoing and constitutes a nuisance.

122.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

123.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties arises from a public nuisance, from which the Plaintiffs and Class have uniquely suffered. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

### CAUSE OF ACTION THREE – NEGLIGENCE

124.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

125.    The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Facility in a reasonable manner and to take reasonable steps to prevent and abate the fugitive emission of noxious odors and air particulates from the Facility.

126.    A properly operated and maintained Facility will not emit noxious Emissions into neighboring residential areas.

127.    The Defendant breached its duties by negligently and improperly maintaining and operating the Facility. By failing to properly maintain and operate its Facility, the Defendant failed

to exercise the duty of ordinary care and diligence.

128. Defendant's breach is demonstrated by its extensive administrative violations, and in the following operational failures:

    a. Operating and maintaining inadequate systems for processing scrap metal;

    b. Operating and maintaining a scrap metal recycling process that inadequately captures, controls, and/or mitigates odor and particulate emissions;

    c. Failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air;

    d. Failing to develop and/or implement an adequate particulate prevention plan;

    e. Failing to utilize other odor and particulate prevention, elimination, and mitigation measures and technology available to Defendant;

    f. Failing to properly store and stockpile scrap and processed scrap metal and non-metals to prevent the release of odor and particulate emissions into the ambient air;

    g. Failing to adequately enclose the stored stockpiles of scrap and processed scrap at the Facility to prevent the release of Emissions into the ambient air;

    h. Failing to adequately screen, remove, collect, and/or dispose of non-metals from its materials to prevent the release of offsite odors and air particulates through the Facility's shredding and processing of scrap metal;

    i. Failing to adequately implement, maintain, and/or operate a fire suppression system at the Facility to prevent the release of Emissions into the ambient air;

    j. Failing to adequately screen, remove, collect, and/or dispose of batteries and other highly flammable substances from its materials to prevent combustion and prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal; and,

    k. Other failures that have yet to be discovered.

129. The Defendant's negligent and improper maintenance of its Facility is the direct and proximate cause of the invasion of noxious Emissions upon the Plaintiffs' and Class's homes, land, and properties on occasions too numerous to mention individually.

130.    By failing to maintain and/or operate the Facility, the Defendant negligently, knowingly, intentionally, and recklessly caused the invasion of the Plaintiffs' property by noxious Emissions.

131.    Such invasions by noxious Emissions were the foreseeable result of the foregoing misconduct by the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. This includes the loss of use and enjoyment of their properties and the diminution of property values, and other losses to be proven at trial.

132.    Defendant could reasonably anticipate that the invasion of the Facility's noxious Emissions upon the Plaintiffs' and the Class's properties would result in property damages in the form of the loss of use and enjoyment and the diminution of property values.

133.    Defendant is liable for all damages arising from such negligence, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION FOUR – TRESPASS

134.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

135.    Defendant intentionally recklessly, willfully, and/or negligently failed to properly construct, maintain, and/or operate the Facility which caused fugitive Emissions including odors, dust, soot, smoke, debris, and fallout to physically invade upon Plaintiffs' property on occasions too numerous to identify independently.

136.    As a direct and proximate result of Defendant's conduct, fugitive Emissions physically invaded, entered upon, settled upon, and accumulated upon Plaintiffs' property.

137.    It was reasonably foreseeable that Defendant's failure to properly maintain and/or operate the Facility would result in an invasion of Plaintiffs' property by fugitive Emissions.

26

138.    The fugitive Emissions that have been and continue to be emitted by Defendant's Facility have invaded and continue to invade Plaintiffs' property and interferes with Plaintiffs' interests in the exclusive possession, use, and enjoyment of their property and constitutes a trespass thereupon.

139.    Plaintiffs did not consent to the physical invasion of their property by fugitive Emissions.

140.    Defendant's actions resulting in trespass upon Plaintiffs' land were and continue to be intentional, willful, and made with conscious disregard for the rights of Plaintiffs, entitling Plaintiffs and the Class to all damages arising therefrom, including compensatory, injunctive, exemplary, and/or punitive relief.

### **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.  Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B.  Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.  Judgment in favor of the Plaintiffs and the Class Members as against the Defendant for each cause of action stated herein;

D.  An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E.  An award of attorneys' fees and costs, including pre- and post-judgement interest as allowable by law;

F.  An Order holding that the entrance of the aforementioned noxious Emissions upon the Plaintiffs' and Class's properties constitutes a nuisance;

G. An Order holding that Defendant was negligent in causing noxious Emissions to repeatedly invade and interfere with the Plaintiffs' and the Class's private residential properties;

H. An Order holding that the entrance of the aforementioned noxious Emissions upon the Plaintiffs' and Class's properties constitutes a trespass;

I. An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and,

J. Such further relief, both general and specific, that this Honorable Court deems just and proper.

## JURY DEMAND

The Plaintiffs respectfully demands a trial by jury on all issues raised in this Complaint, pursuant to Fed. R. Civ. P. 38.

Date: May 28, 2026

Respectfully submitted,

*/s/ Kevin Riechelson*

Kevin S. Riechelson
**COHEN & RIECHELSON**
3500 Quakerbridge Road, Suite 203
Hamilton, New Jersey, 08619
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@crlawoffices.com
*Attorney for Plaintiffs*

*/s/ Steven D. Liddle*

Steven D. Liddle*
Laura L. Sheets*
Matthew Z. Robb*
**LIDDLE SHEETS P.C.**
975 E. Jefferson Ave.
Detroit, MI  48207
(313) 392-0015
sliddle@lsclassaction.com
lsheets@lsclassaction.com
mrobb@lsclassaction.com
*Pro Hac Vice Motions to be submitted
Attorneys for Plaintiffs*

28

**PHILIP J. COHEN, Esq.\*++**
CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A
CIVIL TRIAL ATTORNEY
pcohen@crlawoffices.com

**KEVIN RIECHELSON, Esq.\***
kriechelson@crlawoffices.com

**HOWARD D. POPPER, Esq.\* ±★**
hpopper@crlawoffices.com

**JAMES LAZZARO, Esq. +**
jlazzaro@crlawoffices.com

**CURT J. COX, Esq.+★**
ccox@crlawoffices.com

**BRUCE G. CASSIDY, Esq. \*±★**
bcassidy@crlawoffices.com

★**Of Counsel**
**\* Member of NJ & PA Bar**
**+ Member of NJ Bar**
**++Member of NY Bar**
**±Member of FL & District of Columbia Bar**



### COHEN & RIECHELSON
**3500 QUAKERBRIDGE ROAD, SUITE 203**
**HAMILTON, NEW JERSEY 08619**

**PHONE: (609) 394-8585**
**FAX: (609) 394-8620**

120 WINDSOR PLACE
CENTRAL ISLIP, NY 11722

501 CAMBRIA AVENUE
BENSALEM, PA 19020

1700 MARKET STREET
SUITE 1005
PHILADELPHIA, PA 19103

ONE WESTERN AVENUE
MORRISTOWN, NJ 07960

**PLEASE REPLY TO**
**HAMILTON**

WEB: WWW.KCRLAWFIRM.COM

May 28, 2026

Court Administrator
US District Court of New Jersey
Mitchell H. Cohen Building & US Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101

> **RE: EMR Camden Recycling Plant - Class Action**
> **Docket No.:    1:26-CV-06041**
> **Our File No.:   55558131.000**

Dear Sir or Madam:

With regard to the above captioned, I caused to be filed on May 27, 2026, the Complaint and Civil Cover Sheet. The Complaint was missing pages when filed and I called the Court today to inquire about how to add the missing pages. I was told to file an Amended Document with correspondence explaining what happened.

Should you have any further questions, please feel free to contact our office.

Very truly yours,
Law Offices of
**COHEN & RIECHELSON**

*Kevin Riechelson*
KEVIN RIECHELSON, ESQUIRE

KSR/jh

P:\EMR Camden Recycling Plant\COR\Letter to Court regarding missing pages of Complaint.docx

# EXHIBIT B

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION |
| Plaintiff, | CIVIL ACTION |
| vs. | DOCKET NUMBER: |
| EMR ADVANCED RECYCLING, LLC, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      Plaintiffs, Sandra Wiles and Deandra Smith, on behalf of themselves and all others similarly situated, bring this putative class action against EMR Advanced Recycling, LLC (hereinafter the "Defendant"), which operates, and maintains the scrap metal processing facilities located at 1400 South Front Street, Camden, New Jersey ("Shredder Facility") and an associated facility located at 1500 South 6th Street, Camden, New Jersey ("South 6th Street Facility") (hereinafter referred to collectively as the "Facility").

2.      Through its operation and maintenance of the Facility, Defendant has released, and continues to release overwhelming and widespread noxious odors and air particulates in the form of fugitive dust, soot, smoke, debris, and fallout (collectively, the "Emissions") that invade

1

Plaintiffs' residential properties, and similarly situated residential properties, causing property damages through private nuisance, public nuisance, negligence, and trespass.

## **PARTIES**

3. At all times relevant hereto, Plaintiff Sandra Wiles is an individual citizen of New Jersey that rents and resides at her home located at 703A Ferry Ave., Camden, New Jersey.

4. At all times relevant hereto, Plaintiff Celestine Wallace is an individual citizen of New Jersey that owns and resides at her home located at 711 Walnut St., Camden, New Jersey.

5. At all times relevant hereto, Plaintiff Deandra Smith is an individual citizen of New Jersey that owns and resides at her home located at 1741 S. 4th St., Camden, New Jersey.

6. Defendant and its agents have at all times relevant hereto owned, operated, and/or maintained the scrapyard facility located at 1400 S. Front St., Camden, New Jersey ("Shredder Facility") and an associated facility located at 1500 South 6th Street, Camden, New Jersey ("South 6th Street Facility").

7. Defendant EMR Advanced Recycling, LLC, is a foreign limited liability company organized under the laws of Delaware, registered to do business in New Jersey with its principal place of business located at 201 N. Front Street, Camden, New Jersey 08102, and identified through public sources as the owner, operator, and/or entity exercising control over the Facility. Upon information and belief, Defendant is a citizen of New Jersey.

8. Upon information and belief, Defendant is a wholly owned subsidiary of EMR USA Holdings, Inc., a Delaware corporation with principal place of in New Jersey, and EMR USA Holdings Inc. is a member of Defendant LLC, either directly, or indirectly through other members of Defendant's LLC.

9. Defendant, including its predecessors and agents, maintains and operates the

Facility and has exercised control and ownership over the Facility, including the Shredder Facility and the 6th Street Facility, at all relevant times hereto.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action pursuant to N.J. Const. art. VI, § 3, ¶ 2, as this action involves a local controversy in the State of New Jersey. Plaintiffs are citizens of the State of New Jersey, and the unlawful conduct alleged herein by Defendant occurred in the State of New Jersey

11.     The Court has personal jurisdiction over Defendant pursuant to N.J.S.A. 14A:1–1 et seq., and R. 4:4–4(a)(6), and because Defendant is, or was, during the relevant time: licensed to do business in New Jersey; maintained or maintains its principal place of business in New Jersey; is transacting or has transacted substantial business in New Jersey or is otherwise "at home" in New Jersey; is contracting or has contracted to supply services or things in New Jersey; has or does derive substantial revenue from New Jersey or engages in a persistent course of conduct in New Jersey; and/or had or has interests in, used or uses, or possessed or possesses real property in New Jersey. Defendant has sufficient minimum contacts with the State of New Jersey to give rise to the current action, has continuous and systematic contacts with New Jersey, and/or has consented either explicitly or implicitly to the jurisdiction of this Court. Defendant regularly conducts substantial business in New Jersey through its operation and maintenance of the Facility, and Plaintiffs' claims arise through such contacts, acts, and/or omissions that occurred within the State of New Jersey.

12.     Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because Defendant has purposefully availed itself of the laws of the State of New Jersey and it benefits by

3

regularly conducting business through its industrial operations in the state.

13. Venue is proper in Camden County pursuant to R. 4:3-2 because Plaintiffs' claims arose in Camden County, Defendant does business in Camden County, the tortious and/or otherwise unlawful conduct alleged herein occurred in Camden County and the property harm alleged herein to Plaintiffs was caused in Camden County. Additionally, Plaintiffs are residents of this County, where the property harm alleged herein occurred and where the allegedly affected properties are situated.

## FACTUAL ALLEGATIONS

14. Defendant owns and operates a scrap metal recycling facility located at 1400 South Front Street, Camden, New Jersey 08104 ("Shredder Facility") and an associated facility located at 1500 South 6th Street, Camden, New Jersey 08104 ("South 6th Street Facility").

15. Defendant's Facility receives ferrous and non-ferrous metal, vehicles, batteries, appliances, and aluminum.[1]

16. Defendant's Facility utilizes a hammermill shredder to break down larger scrap metal pieces for further processing.

17. Scrap metal recycling facilities like Defendant's process scrap by sorting and stockpiling materials, loading and conveying materials into a hammermill shredder that breaks them apart into a size suitable for further processing, then conveying shredded materials through various separating mechanisms to separate ferrous and non-ferrous metal using magnetic and/or eddy current.[2] The recovered scrap metals are then later sold or further processed by mills, foundries, smelters, and/or metal brokers.

---

[1] https://us.emrlocal.com/yards/emr-Camden-scrap-metal
[2] https://www.epa.gov/system/files/documents/2021-07/metalshredder-enfalert.pdf

18. Auto and scrap metal shredders like Defendant's are a known source of excess emissions of air pollutants because of the significant amount of non-metal materials, such as plastics, paints, sealants, rubbers, and fluids contained in the scrap.[3] These non-metal materials are vaporized by the extreme heat generated by the shredding process, and are released as fugitive air emissions in the form of Volatile Organic Compounds (VOCs), particulate matter, and other hazardous air pollutants including lead, zinc, cadmium, mercury, and other pollutants.

19. Failure to remove and recover fluids and other potentially hazardous materials such as gasoline, diesel fuel, oil, antifreeze, brake fluid, transmission fluid, lead-acid batteries, vehicle air bags, capacitors, transformers, mercury-containing switches and light ballasts, tires, compressed gas cylinders, and refrigerant appliances may also create a risk of fires and explosions in the shredding, stockpiling, and recycling processes.[4]

20. Defendant's Facility is surrounded by residential properties.

21. Plaintiffs reside within the proposed Class Area.

22. On frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiffs' properties have been and continue to be physically invaded by noxious Emissions.

23. The noxious Emissions which entered Plaintiffs' properties originated from Defendant's Facility, where they are generated as a result of Defendant's scrap metal processing operations.

24. The fugitive odor and particulate emissions caused by Defendant's Facility have been and continue to be dispersed across public and private land in the Class Area.

25. A properly designed, operated, and maintained scrap metal recycling facility will

---

[3] *Id.*
[4] *Id.*

5

adequately capture, remove, and dispose of noxious odor and particulate emissions to prevent the release thereof into the ambient air as fugitive emissions.

26. A properly designed, operated, and maintained scrap metal recycling facility will adequately capture, remove, and dispose of non-metal fluids and materials to prevent the vaporization and subsequent emission thereof into the ambient air as fugitive odor and particulate emissions.

27. A properly designed, operated, and maintained scrap metal recycling facility will not emit odor, dust, soot, smoke, debris, and fallout into the ambient air as fugitive emissions.

28. Defendant is required to control its Emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates fugitive Emissions to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available mitigation, elimination, and control systems at the Facility.

29. Defendant has failed to install, maintain, operate, develop, and/or implement adequate mitigation strategies, processes, technology, and equipment to control its Emissions from the Facility and prevent those Emissions from invading the homes and properties of the Plaintiffs and the putative Class.

30. Defendant's failures to prevent its offsite Emissions include, but are not limited to:

    a. Operating and maintaining inadequate systems for processing scrap metal;

    b. Operating and maintaining a scrap metal recycling process that inadequately captures, controls, and/or mitigates noxious Emissions;

    c. Failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air;

    d. Failing to develop and/or implement an adequate particulate prevention plan;

6

e. Failing to utilize other odor, dust, soot, smoke, debris, and fallout elimination, and mitigation measures and technology available to Defendant;

f. Failing to properly store and stockpile scrap and processed scrap metal and non-metals to prevent the release of Emissions into the ambient air;

g. Failing to adequately enclose the stored stockpiles of scrap and processed scrap at the Facility to prevent the release of Emissions into the ambient air;

h. Failing to adequately screen, remove, collect, and/or dispose of non-metals from its materials to prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal;

i. Failing to adequately implement, maintain, and/or operate a fire suppression system at the Facility to prevent the release of Emissions into the ambient air;

j. Failing to adequately screen, remove, collect, and/or dispose of batteries and other highly flammable substances from its materials to prevent combustion and prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal; and,

k. Other failures to be established through discovery.

31. Defendant has failed to follow proper scrapyard metal recycling practices to prevent the noxious Emissions from invading the homes and properties of the Plaintiffs and the putative Class.

32. The Emissions from Defendant's Facility are noxious and offensive to the senses.

33. On multiple occasions, Plaintiffs' properties have been physically invaded by noxious Emissions as a result of Defendant's repeated failures to properly maintain and operate the Facility, and as the result of fires and explosions occurring at Defendant's Facility.

34. On January 29, 2021, a large fire occurred at Defendant's Shredder Facility located at 1400 South Front Street releasing smoke and metallic odors into the ambient air. As a result of the fire, a neighborhood school, the Sacred Heart School, evacuated and closed due to the emission of smoke and odors. Numerous households within the Class Area were forced to evacuate their homes because of the fire.

35.     On February 27, 2021, Defendant's Shredder Facility experienced a fire caused by "automotive fluff" or "automotive shredder residue," releasing smoke into the ambient air.

36.     On February 28, 2022, nearly a year after the previously reported fire, a scrapyard fire at Defendant's South 6th Street Facility sent plumes of black smoke in the air.[5] The fire was reported to have begun in a pile of "shredded residue."



[Side view of February 28, 2022 fire at Defendant EMR Advanced Recycling, LLC's Facility][6]

37.     On July 21, 2022, the City of Camden Fire Department received a report of a "small fire" at Defendant's Shredder Facility.

38.     On July 22, 2022, the City of Camden Fire Department received another report of a "facility fire" that "[m]ay have been a lithium battery that was on fire" at Defendant's South 6th Street Facility.

39.     On October 18, 2022, an incident of "heavy odor" and smoke was reported to have come from Defendant's Shredder Facility. Residents near Defendant's Facility were advised by a local nonprofit to contact Defendant's representative if they were "uncomfortable staying in [their]

---

[5] https://www.courierpostonline.com/story/news/2022/02/28/fire-emr-scrapyard-sends-smoke-billowing-into-camden-neighborhoods-air-pollution-recycling-industry/9321271002/
[6] *Id.*

home tonight due to the smoke."[7] Residents were offered accommodations by Defendant to stay at a local hotel in downtown Camden.

40.     On July 29, 2024, Defendant reported yet another fire at Defendant's 6th Street Facility. General Counsel for Defendant, Michael Gross, provided a statement to the press that "The fire occurred in our light iron pile due to the suspected presence of a lithium-ion battery."[8]

41.     On February 21, 2025, a four-alarm fire occurred at Defendant's Shredder Facility, which sent billowing black smoke into the ambient air of Camden for several hours, and Camden's Fire Department was engaged in fire suppression efforts that lasted through the next day, February 22, 2025.[9]



[Overhead view of February 21, 2025 fire at Defendant EMR Metal Recycling, LLC's Facility]

42.     As a result of Defendant's February 21, 2025, fire, more than 100 families in the

---

[7] https://www.courierpostonline.com/story/news/local/2022/10/19/fluff-fire-ignites-emr-foul-smell-air-camden-nj/69573067007/

[8] https://www.tapinto.net/towns/camden/sections/police-and-fire/articles/emr-recycling-fire-quickly-extinguished-by-camden-firefighters

[9] https://www.cbsnews.com/philadelphia/news/lithium-ion-battery-caused-junkyard-fire-camden-emr-metal-recycling/

9

neighborhood surrounding its Facility were dislodged and forced to evacuate the area.[10]

43. The February 21, 2025 fire created a "thick smoke that enveloped the city and could be seen as far as 15 miles away."[11] Camden City Commissioners issued a voluntary shelter in place order that was lifted on February 22, 2025 at noon. The Commissioners stated that the City Fire Department was still addressing smoke spots 20 hours after the fire began. In the public statement, the City further condemned Defendant's actions and that "This kind of fire can never happen again at EMR, and we are going to ensure that it never does."

44. Following and as a direct result the February 21, 2025 fire, the City of Camden and Defendant entered into a Memorandum of Understanding on August 15, 2025.

45. As part of the Memorandum of Understanding between the City of Camden and Defendant, Defendant was required to spend approximately $3 million installing a fire suppression system, improve its fire prevention measures, improve its emergency training, reimburse the Camden City Fire Department for damaged equipment, and cease all operations at its 1500 South Sixth Street scrapyard in Camden. Defendant was further required to commit an initial investment of $1 million to fund "essential needs" in the community and make annual donations of $450,000 to local community foundations.

46. After investigating the February 21, 2025 fire at its Facility, Defendant stated that it was likely caused by a lithium-ion battery.[12]

47. On August 12, 2025, another fire erupted at Defendant's Shredder Facility.

---

[10] https://www.camdencounty.com/mayor-negotiates-6-7-million-agreement-for-the-residents-of-waterfront-south-with-emr/

[11] https://www.camdencounty.com/statement-from-commissioners-regarding-the-fire-in-south-camden-city-at-the-emr-facility/https://www.camdencounty.com/statement-from-commissioners-regarding-the-fire-in-south-camden-city-at-the-emr-facility/

[12] https://www.cbsnews.com/philadelphia/news/lithium-ion-battery-caused-junkyard-fire-camden-emr-metal-recycling/

48.     On October 17, 2025, another fire was sent ablaze at Defendant's South 6th Street Facility.

49.     On February 26, 2026, another fire erupted at Defendant's Facility.[13] During the extinguishing of the fires, neighbors of Defendant's Facility were urged to avoid the area.



[Overhead view of February 26, 2026 fire at Defendant EMR Metal Recycling, LLC's Facility]

50.     On May 29, 2026, another fire erupted at Defendant's Shredder Facility, which caused Defendant to pause shredding operations pending review of the root cause. Like more than a dozen prior fires, the fire send smoke plumes billowing across a wide area and led city officials to advise residents against being outdoors and for others to avoid the area.[14]

51.     Defendant's Facility has caused numerous fires and explosions, which in turn have released noxious Emissions in the form of soot, smoke, debris, and fallout into the neighboring properties and have at times forced owner-occupants and renters of residential property within the

---

[13] https://www.msn.com/en-us/weather/topstories/firefighters-battle-another-fire-at-emr-junkyard-in-camden-nj-on-thursday/ar-AA1X9UsL?ocid=BingNewsSerp
[14] https://www.courierpostonline.com/story/news/health/2026/05/29/emr-recycling-fire-camden-fire-air-quality-alert-emr-lawsuit-recyling-plant-fire/90310589007/

putative Class Area to evacuate their homes.

52.     Separately and in addition to the above fires and explosions, Defendant's Facility has released noxious Emissions as a result of its improper operation and maintenance of the Facility on occasions too numerous to list herein.

53.     Defendant's fires and Emissions were preventable through reasonable care and diligence.

54.     As a result of Defendant's negligent operation and/or maintenance of its Facility, including but not limited to the failure to collect, remove, and dispose of flammable materials and conditions within its scrap metal processing, Defendant has released noxious Emissions and has caused fires.

55.     As a foreseeable, direct, and proximate result of Defendant's fires, noxious Emissions have physically invaded Plaintiffs' properties on numerous occasions, thereby causing damages.

56.     As a foreseeable, direct, and proximate result of Defendant's failures to properly operate and maintain its Facility, noxious Emissions have physically invaded Plaintiffs' properties on numerous occasions, thereby causing damages.

57.     Numerous households have contacted Plaintiffs' counsel documenting the Emissions they attribute to Defendant's Facility.

58.     Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the fugitive Emissions, which have caused damages to neighboring properties.

     a.  Plaintiff Sandra Wiles stated that "The air quality was really bad, couldn't use my air conditioning or open windows and it affected my asthma. Couldn't' take my pets outdoors for bathroom purposes. Had to stay with my sister for 3 days."

12

b. Plaintiff Celestine Wallace indicated that "The air inside my home became unbearable at times, forcing me to take costly measures to protect my health and property. I have had to remodel parts of my home, install new windows, and invest in air purifiers in order to make the air inside my home safer to breathe. The situation has caused me significant stress, financial burden, and concern for my long-term health and well-being. No resident should have to live under these conditions or bear these costs due to environmental hazards in their neighborhood."

c. Plaintiff Deandra Smith reported that "Soot has accumulated on step and roof. We were evacuated in Feb 2025 for the big fire had to stay at hotel."

d. Putative Class Member Amarilys Miranda stated that "We usually smell burning metal in the mornings the smell is strong to the point no one should be outside more than 5-10 minutes at a time and when its warm outside its 10x worse. I noticed soot on our streets and on the cars at times when its dry/hot weather. I don't let my girls play outside when its bad!"

e. Putative Class Member Mayra Tomas reported that "The odor was so strong that I had to stay indoors my porch had soot also my porch windows had to be cleaned."

59. Defendant's well documented pattern of failing to control its Emissions is further demonstrated by the extensive administrative enforcement record of the Facility, verified by independent government investigations by the New Jersey Department of Environmental Protection (NJDEP).

60. On July 23, 2020, Defendant was issued a notice of violation (NOV) by NJDEP for failing to obtain a preconstruction permit for a significant air contaminant source emission. The violation was described by NJDEP as follows:

a. "You installed a material handling source operation that emits one or more air contaminants directly to the outdoor air without first obtaining a Preconstruction Permit for the significant source operation. Specifically, you installed material handling equipment at the Kaighn Ave staging yard area of your facility, including but not limited to, front end loaders, industrial claw grabber, and industrial magnet that process in excess of 50 pounds of scrap metal (and/or non-metal scrap fluff) in any one hour."

13

61.     On December 7, 2020, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to store residues separately from recyclable material and in a manner that prevents run-off, leakage or seepage from the residue storage area into, on or around the soil of the residue storage area." Defendant was cited for the same violation again on December 9, 2020 and December 15, 2020.

62.     On December 8, 2020, Defendant was issued an NOV by NJDEP for failing to obtain a solid waste facility (SWF) permit prior to constructing and operating a solid waste facility on the Facility's premises, including failing to submit and obtain the Department's approval for a quality control plan and a sampling and analytical plan.

63.     On January 13, 2021, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to store residues separately from recyclable material and in a manner that prevents run-off, leakage or seepage from the residue storage area into, on or around the soil of the residue storage area."

64.     On March 12, 2021, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to ensure an adequate water supply and fire-fight equipment were readily available to extinguish any fires." Defendant's Facility and its related activities also "were not in conformance with municipal ordinances, including, but not limited to ordinances concerning ingress and egress, traffic patterns, parking, signage, operational hours, noise, dust, and structure height." Defendant also stored residues for more than six months, violating N.J.A.C. 7:26A- 4.1(a)2.

65.     On June 25, 2021, Defendant was issued an NOV by NJDEP for failing to obtain a solid waste facility permit prior to constructing and operating a solid waste facility on the Facility's premises. "Specifically, facility has stored an ASR pile on site for longer than 6 months.

14

Photographic evidence was taken from inside and outside the facility." Defendant also stored residues for more than six months, violating N.J.A.C. 7:26A- 4.1(a)2.

66.     In relation to the fires caused by Defendant's Facility on November 29, 2020 and January 29, 2021, Defendant entered into a settlement agreement with NJDEP on October 25, 2023 and was assessed a $7,600 penalty and a $89,750 fine from the County Health Department Hazmat division.[15] Defendant's violations were described as:

    a.  "On January 29, 2021, you caused the release of one or more air contaminants, in a quantity or concentration which posed a potential threat to the public health, welfare or the environment or may have reasonably resulted in citizen complaints and failed to notify the Department immediately."

    b.  "On November 29, 2020, you caused the release of one or more air contaminants, in a quantity or concentration which posed a potential threat to the public health, welfare or the environment or may have reasonably resulted in citizen complaints and failed to notify the Department immediately."

    c.  "You permitted smoke and odors from the shredded material fluff pile fire on January 29, 2021 to be emitted into the outdoor atmosphere in quantities which resulted in air pollution."

67.     Following the numerous fires, a dozen over the last five years, the State of New Jersey and the NJDEP filed a civil lawsuit on January 12, 2026, alleging public nuisance counts against Defendant and its other EMR affiliates for the frequent smoke, fires, and air pollution emitted from its Facility and other facilities in New Jersey.

68.     Defendant's Facility has repeatedly emitted objectionable noxious odors and fugitive dust, soot, debris, smoke, and fallout that were detectable outside the bounds of its property.

---

[15] https://www.tapinto.net/towns/camden/sections/business-and-finance/articles/emr-fined-97k-after-january-fire-sent-heavy-smoke-into-camden-neighborhoods

69.     The Facility's noxious Emissions have caused negative impacts to its neighbors, including lost use and enjoyment of private residential property and adverse impacts on residential property values.

70.     Defendant has repeatedly been cited by regulators for failing to operate the Facility in accordance with its duty to control fugitive Emissions, discharging these Emissions into the surrounding community.

71.     Defendant's noxious Emissions are continuing; Defendant has failed to cease the noxious Emissions, despite knowledge, and despite the Emissions being abatable with reasonable care and diligence.

72.     The noxious Emissions from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

73.     Plaintiffs and the putative class are a limited subset of individuals in Camden and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

74.     The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, recreational areas, dining, healthcare and social services, education, and ministry.

75.     Members of the public, including but not limited to business owners, employees, commuters, visitors, customers, patients, clients, students, and worshippers, have experienced and been harmed by the fugitive noxious emissions from the Facility into public spaces; however, unlike Plaintiffs and the putative class, members of the public who are outside of the Class

Definition have not suffered damages of the same kind, in the form of adversely impacted property values and/or loss of use and enjoyment of their private property.

76.    The invasion of Plaintiffs' property and that of the Class by noxious odors and air particulates has negatively impacted the value of and interfered with the use and enjoyment of those properties, resulting in property damages.

## CLASS ALLEGATIONS

### *Class Definition*

77.    Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Rule 4:32 of the New Jersey Court Rules. Plaintiffs seek to represent a Class of persons defined as:

**All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the following geographical area:**

> **Starting at Spruce Street and S 9th Street, proceed south on S 9th Street. At Sycamore Street continue east to S 10th Street. Follow S 10th Street south to Mechanic Street. Go east on Mechanic Street and then continue south on S 10th Street. At Bulson Street go west and continue to the railroad track following them northeast to Jefferson Street. Proceed east on Jefferson Street to the Delaware River. Follow the river front north to Spruce Street. Follow Spruce Street west to the point of origin.**

**The Class Area is further depicted in the map below:**

17



The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members").

78.     Plaintiffs further propose the following <u>Evacuation Subclass</u>, which they seek to represent, defined as:

> **All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the Class Area that have been forced to evacuate their homes in response to fires at Defendant's Facility.**

**The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Evacuation Subclass ("Evacuation Subclass Members").**

79.     This case is properly maintainable as a class action pursuant to an in accordance with Rule 4:32 of the New Jersey Court Rules in that:

    a.     The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b.     There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

    c.     Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

18

d.      A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

e.      The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

f.      There are no unusual difficulties foreseen in the management of this class action; and,

g.      Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

## A. Numerosity

80.      Based on available data, there are thousands of residential households within the Class Area and therefore is so numerous that joinder is impracticable.

## B. Commonality

81.      Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including, but not limited to the following:

a.      Whether and how Defendant negligently and knowingly failed to reasonably maintain and operate the Facility to prevent offsite Emissions;

b.      Whether Defendant owed any duties to Plaintiffs;

c.      Which duties Defendant owed to Plaintiffs;

d.      Which steps Defendant has and has not taken to control its Emissions through the maintenance and operation of its Facility;

e.      Whether and to what extent the Facility's Emissions were dispersed over the Class Area;

f.      Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Facility would result in an invasion of Plaintiffs' property interests;

g.      Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference under an objective legal standard; and,

19

h.      The proper measure of damages incurred by Plaintiffs and the Class.

## C.  Typicality

82.     Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

83.     The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly repair, maintain and operate the Facility.

84.     Class Members have similar injuries to the Plaintiffs as a result of the invasion of their properties by Defendant's release of Emissions causing damage to their properties.

## D.  Adequacy of Representation

85.     Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care.

86.     Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

87.     Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of Emissions originating from Defendant's Facility.

88.     Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from the offsite emission of air pollution from industrial facilities.

89.  Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**E.  Class Treatment is the Superior Method of Adjudication**

90.  A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a.  Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudication with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

b.  Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

c.  The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and,

d.  The proposed class action is manageable.

91.  Further, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

92.  Notice can be provided to members of the Class by U.S. Mail and/or publication.

### CAUSE OF ACTION ONE – PRIVATE NUISANCE

93.  Plaintiffs restate the allegations of this Complaint as if fully restated herein.

94.  The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

95.  The Emissions which entered the Plaintiffs' and Class's properties originated from the Facility, which was improperly and unreasonably maintained and/or operated by the

Defendant.

96.     The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

97.     The noxious Emissions which entered the Plaintiffs' and Class's properties originated from the Defendant's Facility, which is in close proximity to the Class Area.

98.     By failing to reasonably design, operate, repair, and maintain its Facility, the Defendant has caused an invasion of the Plaintiffs' and Class's properties by its Emissions on unusually frequent occasions that are too numerous to comprehensively list herein.

99.     The noxious Emissions invading the Plaintiffs' and Class's properties are indecent and offensive to individuals with ordinary sensibilities. The noxious Emissions substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and the ability to use and enjoy their properties. This includes, but is not limited to:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties;

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes; and,

e) Forcing Plaintiffs and Class Members to evacuate their homes entirely for extended periods of time.

100.    By failing to reasonably repair, maintain, and/or operate its Facility, the Defendant has wrongfully, negligently, and knowingly created a foreseeable risk of harm and caused an

unreasonable invasion of the Plaintiffs' and Class's properties by noxious odors and air particulates.

101.    Defendant's nuisance is recurring and ongoing.

102.    Defendant's nuisance is abatable.

103.    By failing to reasonably repair, maintain, and/or operate the Facility, thereby causing noxious Emissions to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class's properties.

104.    The Defendant owed, and continues to owe, a duty to Plaintiffs and the putative Class to prevent and abate the unreasonable interference with the invasion of their private property interests.

105.    As a result of the forgoing misconduct by the Defendant, the Plaintiffs and Class suffered, and continue to suffer, damages to their properties as alleged herein.

106.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's Emissions, which is ongoing and constitutes a nuisance.

107.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

108.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

23

**CAUSE OF ACTION TWO – PUBLIC NUISANCE**

109.   Plaintiffs restate the allegations of this Complaint as if fully restated herein.

110.   Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

111.   Plaintiffs and the putative class are a limited subset of individuals in Camden County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

112.   The Emissions that entered Plaintiffs and the Class's properties originated from Defendant's Facility, which is in close proximity to the proposed Class Area.

113.   The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, dining, recreation, healthcare, education, and ministry.

114.   By failing to reasonably operate, repair, and/or maintain the Facility, Defendant has caused an invasion of Plaintiffs' property by noxious Emissions on frequent occasions that are too numerous to individually list herein.

115.   The noxious Emissions that invade the Plaintiffs' and the Class's properties are indecent and offensive to the Plaintiffs and Class, and they are indecent and offensive to individuals with ordinary sensibilities. The noxious Emissions substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and their ability to use and enjoy their properties. This includes, but is not limited to:

a)   Forcing Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b)   Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

24

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties;

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes; and,

e) Forcing Plaintiffs and Class Members to evacuate their homes entirely for extended periods of time.

116. Due to the Defendant's Facility Emissions, the Plaintiffs and the Class have suffered, and continue to suffer, special harm relating to the use and enjoyment of their lands and properties, and decreased property values.

117. Separate and apart from the private property damage incurred by the Plaintiffs and the Class, the Defendant's Emissions have substantially interfered with rights common to the general public, including the right to breathe clean air.

118. The injuries to the Plaintiffs' and Class's properties and the harmed rights associated with those properties are separate and different in kind from the harm caused by Defendant to the public at-large and/or other private individuals not within the Class definition.

119. As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

120. The damages suffered by the Plaintiffs and the Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their land and property, and decreased property values, which are not harms suffered by the general public.

121. The general public is also impacted by the Facility's noxious Emissions when they work, worship, commute, study, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property or adversely impacted property values.

The harm to the general public is separate and apart from the harm to private property experienced by Plaintiffs and the Class.

122.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious Emissions, which is ongoing and constitutes a nuisance.

123.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

124.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties arises from a public nuisance, from which the Plaintiffs and Class have uniquely suffered. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION THREE – NEGLIGENCE

125.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

126.    The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Facility in a reasonable manner and to take reasonable steps to prevent and abate the fugitive emission of noxious odors and air particulates from the Facility.

127.    A properly operated and maintained Facility will not emit noxious Emissions into neighboring residential areas.

128.    The Defendant breached its duties by negligently and improperly maintaining and operating the Facility. By failing to properly maintain and operate its Facility, the Defendant failed to exercise the duty of ordinary care and diligence.

129.    Defendant's breach is demonstrated by its extensive administrative violations, and in the following operational failures:

26

a.  Operating and maintaining inadequate systems for processing scrap metal;

b.  Operating and maintaining a scrap metal recycling process that inadequately captures, controls, and/or mitigates odor and particulate emissions;

c.  Failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air;

d.  Failing to develop and/or implement an adequate particulate prevention plan;

e.  Failing to utilize other odor and particulate prevention, elimination, and mitigation measures and technology available to Defendant;

f.  Failing to properly store and stockpile scrap and processed scrap metal and non-metals to prevent the release of odor and particulate emissions into the ambient air;

g.  Failing to adequately enclose the stored stockpiles of scrap and processed scrap at the Facility to prevent the release of Emissions into the ambient air;

h.  Failing to adequately screen, remove, collect, and/or dispose of non-metals from its materials to prevent the release of offsite odors and air particulates through the Facility's shredding and processing of scrap metal;

i.  Failing to adequately implement, maintain, and/or operate a fire suppression system at the Facility to prevent the release of Emissions into the ambient air;

j.  Failing to adequately screen, remove, collect, and/or dispose of batteries and other highly flammable substances from its materials to prevent combustion and prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal; and,

k.  Other failures that have yet to be discovered.

130.  The Defendant's negligent and improper maintenance of its Facility is the direct and proximate cause of the invasion of noxious Emissions upon the Plaintiffs' and Class's homes, land, and properties on occasions too numerous to mention individually.

131.  By failing to maintain and/or operate the Facility, the Defendant negligently, knowingly, intentionally, and recklessly caused the invasion of the Plaintiffs' property by noxious Emissions.

27

132.    Such invasions by noxious Emissions were the foreseeable result of the foregoing misconduct by the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. This includes the loss of use and enjoyment of their properties and the diminution of property values, and other losses to be proven at trial.

133.    Defendant could reasonably anticipate that the invasion of the Facility's noxious Emissions upon the Plaintiffs' and the Class's properties would result in property damages in the form of the loss of use and enjoyment and the diminution of property values.

134.    Defendant is liable for all damages arising from such negligence, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION FOUR – TRESPASS

135.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

136.    Defendant intentionally recklessly, willfully, and/or negligently failed to properly construct, maintain, and/or operate the Facility which caused fugitive Emissions including odors, dust, soot, smoke, debris, and fallout to physically invade upon Plaintiffs' property on occasions too numerous to identify independently.

137.    As a direct and proximate result of Defendant's conduct, fugitive Emissions physically invaded, entered upon, settled upon, and accumulated upon Plaintiffs' property.

138.    It was reasonably foreseeable that Defendant's failure to properly maintain and/or operate the Facility would result in an invasion of Plaintiffs' property by fugitive Emissions.

139.    The fugitive Emissions that have been and continue to be emitted by Defendant's Facility have invaded and continue to invade Plaintiffs' property and interferes with Plaintiffs' interests in the exclusive possession, use, and enjoyment of their property and constitutes a trespass thereupon.

140.    Plaintiffs did not consent to the physical invasion of their property by fugitive Emissions.

141.    Defendant's actions resulting in trespass upon Plaintiffs' land were and continue to be intentional, willful, and made with conscious disregard for the rights of Plaintiffs, entitling Plaintiffs and the Class to all damages arising therefrom, including compensatory, injunctive, exemplary, and/or punitive relief.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A.  Certification of the proposed Class by order pursuant to Rule 4:32 of the New Jersey Court Rules;

B.  Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C.  Judgment in favor of the Plaintiffs and the Class Members as against the Defendant for each cause of action stated herein;

D.  An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E.  An award of attorneys' fees and costs, including pre- and post-judgement interest as allowable by law;

F.  An Order holding that the entrance of the aforementioned noxious Emissions upon the Plaintiffs' and Class's properties constitutes a nuisance;

G.  An Order holding that Defendant was negligent in causing noxious Emissions to repeatedly invade and interfere with the Plaintiffs' and the Class's private residential properties;

H.  An Order holding that the entrance of the aforementioned noxious Emissions upon the Plaintiffs' and Class's properties constitutes a trespass;

29

I.   An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and,

J.   Such further relief, both general and specific, that this Honorable Court deems just and proper.

## JURY DEMAND

The Plaintiffs respectfully demands a trial by jury on all issues raised in this Complaint.

Date:___6/17/2026_____                                Respectfully submitted,

*Kevin Riechelson*

_____
Kevin S. Riechelson
**COHEN & RIECHELSON**
3500 Quakerbridge Road, Suite 203
Hamilton, New Jersey, 08619
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@crlawoffices.com

*/s/ Steven D. Liddle*

Steven D. Liddle*
Laura L. Sheets*
Matthew Z. Robb*
**LIDDLE SHEETS P.C.**
975 E. Jefferson Ave.
Detroit, MI  48207
(313) 392-0015
sliddle@lsclassaction.com
lsheets@lsclassaction.com
mrobb@lsclassaction.com
*\*Pro Hac Vice Motions to be submitted*
*Attorneys for Plaintiffs*

30

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, *and* DEANDRA SMITH, *on behalf of themselves and all others similarly situated,* : : : : : | CIVIL ACTION NO._____ |
| Plaintiffs, : : | |
| v. : : | |
| EMR ADVANCED RECYCLING, LLC, : : | |
| Defendant. : | |

**AFFIDAVIT OF DAVID FARNSWORTH**

I, David Farnsworth, hereby certify under penalty of perjury that:

1.      I am the Chief Financial Officer of EMR USA (Holdings) Inc. ("EMR USA") and I am authorized to execute this affidavit on behalf of EMR USA.

2.      Plaintiffs have filed a putative class action complaint captioned *Sandra Wiles, et al. v. EMR Advanced Recycling, LLC*, No. CAM-L-002142-26, in the Superior Court of New Jersey Camden County, Law Division.

3.      The sole named defendant in that action is EMR Advanced Recycling, LLC. *See generally* Ex. B, Complaint.

4.      I am familiar with the ownership and corporate standing of EMR USA and its subsidiaries, including EMR Advanced Recycling, LLC.

5.      EMR USA is the sole member of EMR Financing LLC.

6.      EMR Financing LLC is the sole member of EMR Eastern LLC.

7.      EMR Eastern LLC is the sole member of EMR Advanced Recycling, LLC.

1

4149051_2

8.      As a result, EMR Advanced Recycling, LLC is an indirect, wholly-owned subsidiary of EMR USA.

9.      EMR USA is a holding company that functions primarily to hold its operating subsidiaries and provide financial, administrative, and related corporate support services to those subsidiaries.

10.     EMR USA is incorporated in the state of Delaware.

11.     EMR USA's only office is in Metairie, Louisiana.

12.     EMR USA maintains its corporate books and records in Metairie, Louisiana.

13.     As Chief Financial Officer, I oversee EMR USA's day-to-day corporate administration from Metairie, Louisiana, and am responsible for its financial, treasury, tax, accounting, banking, insurance, and related corporate functions.

14.     EMR USA's other officers and directors are located in various places including New Jersey, the United Kingdom, and Germany.

15.     EMR USA conducts its annual conferences and Board meetings virtually and at different locations throughout the United States.  The last three annual conferences were held in Atlanta, Dallas, and Nashville.  The last three Board meetings were held virtually, in Camden, and in Atlanta.

16.     EMR USA's corporate administration, financial, treasury, tax, accounting, banking, and insurance decisions are made in Metairie, Louisiana, and these functions are directed, controlled, and coordinated from Metairie, Louisiana.

17.     The majority of EMR USA's employees—26 of 38—are located in Louisiana. The remaining 12 employees are located in Texas, Minnesota, and remotely.

18.     Accordingly, EMR USA's principal place of business is in Metairie, Louisiana.

2

4149051_2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 22, 2026

David Farnsworth
Chief Financial Officer
EMR USA Holdings, Inc.

3

4149051_2

# EXHIBIT D

**Judiciary eCourts System - Civil Part**

Home    Help    Logout

CASE JACKET |                                                                                   User:

## Docket Number: CAM L 002142 - 26

[Back]

[Create Summary Report]

**Case Caption:** Wiles Sandra Vs Emr Advanced Recycli Ng, Llc

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Camden | **Case Initiation Date:** 06/17/2026 |
| **Case Type:** Complex Commercial | **Case Status:** Active | **Jury Demand:** 6 Jurors |
| **Case Track:** 4 | **Judge:** Michael J Kassel | **Team:** 202 |
| **# of Discovery Days:** 450 | **Age of Case:** 0 YR 01 MO 05 DY | **Consolidated Case:** N |
| **Original Discovery End Date:** 10/02/2027 | **Current Discovery End Date:** 10/02/2027 | **# of DED Extensions:** 0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:** 0 |
| **Disposition Date:** | **Case Disposition:** Open | **Statewide Lien:** |

| Plaintiffs (3) | Defendants (1) | Case Proceedings (6) | ACMS Documents (11) | Fees (11) |
|---|---|---|---|---|

| | |
|---|---|
| Sandra Wiles | (Party No. 1) |
| Celestine Wallace | (Party No. 2) |
| Deandra Smith | (Party No. 3) |

**Case Actions**

| Filed Date | Filings | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|
| 06/17/2026 | 📎 ✉ | Complaint with Jury Demand for CAM-L-002142-26 submitted by RIECHELSON, KEVIN S, COHEN & RIECHELSON on behalf of SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH against EMR ADVANCED RECYCLING, LLC | LCV20261624264 | 06/17/2026 |
| 06/17/2026 | ✉ | **DEFICIENCY NOTICE**: re: Complaint [LCV20261624264] -Complaint is incomplete & atty signature is missing (R. 1:5-6(c)) | LCV20261626484 | 06/17/2026 |
| 06/17/2026 | 📎 ✉ | COMPLAINT WITH JURY DEMAND submitted by RIECHELSON, KEVIN, S of COHEN & RIECHELSON on behalf of SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH against EMR ADVANCED RECYCLING, LLC | LCV20261629185 | 06/17/2026 |
| 06/18/2026 | 📎 ✉ | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20261631465 | 06/18/2026 |
| 06/22/2026 | 📎 ✉ | MOTION FOR ADMISSION PRO HAC VICE submitted by RIECHELSON, KEVIN, S of COHEN & RIECHELSON on behalf of SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH against EMR ADVANCED RECYCLING, LLC | LCV20261657981 | 06/22/2026 |
| 06/22/2026 | 📎 ✉ | MOTION FOR ADMISSION PRO HAC VICE submitted by RIECHELSON, KEVIN, S of COHEN & RIECHELSON on behalf of SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH against EMR ADVANCED RECYCLING, LLC | LCV20261658020 | 06/22/2026 |
| 06/22/2026 | 📎 ✉ | MOTION FOR ADMISSION PRO HAC VICE submitted by RIECHELSON, KEVIN, S of COHEN & RIECHELSON on behalf of SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH against EMR ADVANCED RECYCLING, LLC | LCV20261658046 | 06/22/2026 |
| 06/24/2026 | ✉ | The motion filed on 06/22/2026 will be decided on 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261657981] | LCV20261679142 | 06/24/2026 |
| 06/24/2026 | ✉ | The motion filed on 06/22/2026 will be decided on 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261658020] | LCV20261679151 | 06/24/2026 |
| 06/24/2026 | ✉ | The motion filed on 06/22/2026 will be decided on 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261658046] | LCV20261679188 | 06/24/2026 |
| 06/25/2026 | ✉ | The motion filed on 06/22/2026 was rescheduled to 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261657981] | LCV20261687917 | 06/25/2026 |
| 06/25/2026 | ✉ | The motion filed on 06/22/2026 was rescheduled to 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261658020] | LCV20261687923 | 06/25/2026 |
| 06/25/2026 | ✉ | The motion filed on 06/22/2026 was rescheduled to 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261658046] | LCV20261687932 | 06/25/2026 |

| Filed Date | Filings | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|
| 07/07/2026 | | ACKNOWLEDGEMENT OF SERVICE submitted by RIECHELSON, KEVIN, S of COHEN & RIECHELSON on behalf of CELESTINE WALLACE, DEANDRA SMITH against EMR ADVANCED RECYCLING, LLC | LCV20261779021 | 07/07/2026 |
| 07/09/2026 | | NOTICE OF APPEARANCE (NOT THE FIRST PAPER) submitted by CAMPBELL, KATHLEEN of MANKO GOLD KATCHER FOX, LLP on behalf of EMR ADVANCED RECYCLING, LLC against SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH | LCV20261810830 | 07/09/2026 |
| 07/09/2026 | | NOTICE OF APPEARANCE (NOT THE FIRST PAPER) submitted by DILLON, MICHAEL of MANKO GOLD KATCHER FOX, LLP on behalf of EMR ADVANCED RECYCLING, LLC against SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH | LCV20261810974 | 07/09/2026 |
| 07/09/2026 | | NOTICE OF APPEARANCE (NOT THE FIRST PAPER) submitted by BAGWELL, DANIELLE, N of MANKO GOLD KATCHER FOX, LLP on behalf of EMR ADVANCED RECYCLING, LLC against SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH | LCV20261811194 | 07/09/2026 |
| 07/13/2026 | | **CLERK NOTICE**: re: NOTICE OF APPEARANCE (NOT THE FIRST PAPER) [LCV20261811194] - Please be advised that your collateral account has been charged $175 pursuant to NJ Court Rule 1:43, as this is a first paper for Defendant. Thank you | LCV20261838750 | 07/13/2026 |
| 07/17/2026 | | ORDER FOR ADMISSION PRO HAC VICE-Granted by Judge KASSEL, MICHAEL, J re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261658046] | LCV20261902753 | 07/20/2026 |
| 07/17/2026 | | ORDER FOR ADMISSION PRO HAC VICE-Granted by Judge KASSEL, MICHAEL, J re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261658020] | LCV20261902782 | 07/20/2026 |
| 07/17/2026 | | ORDER FOR ADMISSION PRO HAC VICE-Granted by Judge KASSEL, MICHAEL, J re: MOTION FOR ADMISSION PRO HAC VICE [LCV20261657981] | LCV20261902858 | 07/20/2026 |

Showing 1 to 21 of 21 entries

**COHEN & RIECHELSON**
**BY:    KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>    Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.     Plaintiffs, Sandra Wiles and Deandra Smith, on behalf of themselves and all others similarly situated, bring this putative class action against EMR Advanced Recycling, LLC (hereinafter the "Defendant"), which operates, and maintains the scrap metal processing facilities located at 1400 South Front Street, Camden, New Jersey ("Shredder Facility") and an associated facility located at 1500 South 6th Street, Camden, New Jersey ("South 6th Street Facility") (hereinafter referred to collectively as the "Facility").

2.     Through its operation and maintenance of the Facility, Defendant has released, and continues to release overwhelming and widespread noxious odors and air particulates in the form of fugitive dust, soot, smoke, debris, and fallout (collectively, the "Emissions") that invade

1

Plaintiffs' residential properties, and similarly situated residential properties, causing property damages through private nuisance, public nuisance, negligence, and trespass.

**PARTIES**

3. At all times relevant hereto, Plaintiff Sandra Wiles is an individual citizen of New Jersey that rents and resides at her home located at 703A Ferry Ave., Camden, New Jersey.

4. At all times relevant hereto, Plaintiff Celestine Wallace is an individual citizen of New Jersey that owns and resides at her home located at 711 Walnut St., Camden, New Jersey.

5. At all times relevant hereto, Plaintiff Deandra Smith is an individual citizen of New Jersey that owns and resides at her home located at 1741 S. 4th St., Camden, New Jersey.

6. Defendant and its agents have at all times relevant hereto owned, operated, and/or maintained the scrapyard facility located at 1400 S. Front St., Camden, New Jersey ("Shredder Facility") and an associated facility located at 1500 South 6th Street, Camden, New Jersey ("South 6th Street Facility").

7. Defendant EMR Advanced Recycling, LLC, is a foreign limited liability company organized under the laws of Delaware, registered to do business in New Jersey with its principal place of business located at 201 N. Front Street, Camden, New Jersey 08102, and identified through public sources as the owner, operator, and/or entity exercising control over the Facility. Upon information and belief, Defendant is a citizen of New Jersey.

8. Upon information and belief, Defendant is a wholly owned subsidiary of EMR USA Holdings, Inc., a Delaware corporation with principal place of in New Jersey, and EMR USA Holdings Inc. is a member of Defendant LLC, either directly, or indirectly through other members of Defendant's LLC.

9. Defendant, including its predecessors and agents, maintains and operates the

2

# Civil Case Information Statement

## Case Details: CAMDEN | Civil Part Docket# L-002142-26

**Case Caption:** WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC

**Case Initiation Date:** 06/17/2026

**Attorney Name:** KEVIN S RIECHELSON

**Firm Name:** COHEN & RIECHELSON

**Address:** 3500 QUAKERBRIDGE RD STE 203

HAMILTON NJ 08619

**Phone:** 6093948585

**Name of Party:** PLAINTIFF : Sandra Wiles

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Sandra Wiles? NO**

**Are sexual abuse claims alleged by: Celestine Wallace? NO**

**Are sexual abuse claims alleged by: Deandra Smith? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
> **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
> **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/17/2026                                                          /s/ KEVIN S RIECHELSON
Dated                                                                           Signed

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following deficiency notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH |
| Defendant Name: | EMR ADVANCED RECYCLING, LLC |
| Case Caption: | WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC |
| Case Number: | CAM L 002142-26 |
| Docket Text: | **DEFICIENCY NOTICE**: re: Complaint LCV20261624264 -Complaint is incomplete & atty signature is missing (R. 1:5-6(c)) |
| Transaction ID: | LCV20261626484 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | EMR ADVANCED RECYCLING, LLC | 201 N. FRONT STREET, CAMDEN, NJ 08102 |

Login to eCourts to view the Case Jacket. You will need a valid user ID (Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

**COHEN & RIECHELSON**
**BY:    KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

|  |  |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      Plaintiffs, Sandra Wiles and Deandra Smith, on behalf of themselves and all others similarly situated, bring this putative class action against EMR Advanced Recycling, LLC (hereinafter the "Defendant"), which operates, and maintains the scrap metal processing facilities located at 1400 South Front Street, Camden, New Jersey ("Shredder Facility") and an associated facility located at 1500 South 6th Street, Camden, New Jersey ("South 6th Street Facility") (hereinafter referred to collectively as the "Facility").

2.      Through its operation and maintenance of the Facility, Defendant has released, and continues to release overwhelming and widespread noxious odors and air particulates in the form of fugitive dust, soot, smoke, debris, and fallout (collectively, the "Emissions") that invade

1

Plaintiffs' residential properties, and similarly situated residential properties, causing property damages through private nuisance, public nuisance, negligence, and trespass.

## **PARTIES**

3.   At all times relevant hereto, Plaintiff Sandra Wiles is an individual citizen of New Jersey that rents and resides at her home located at 703A Ferry Ave., Camden, New Jersey.

4.   At all times relevant hereto, Plaintiff Celestine Wallace is an individual citizen of New Jersey that owns and resides at her home located at 711 Walnut St., Camden, New Jersey.

5.   At all times relevant hereto, Plaintiff Deandra Smith is an individual citizen of New Jersey that owns and resides at her home located at 1741 S. 4th St., Camden, New Jersey.

6.   Defendant and its agents have at all times relevant hereto owned, operated, and/or maintained the scrapyard facility located at 1400 S. Front St., Camden, New Jersey ("Shredder Facility") and an associated facility located at 1500 South 6th Street, Camden, New Jersey ("South 6th Street Facility").

7.   Defendant EMR Advanced Recycling, LLC, is a foreign limited liability company organized under the laws of Delaware, registered to do business in New Jersey with its principal place of business located at 201 N. Front Street, Camden, New Jersey 08102, and identified through public sources as the owner, operator, and/or entity exercising control over the Facility. Upon information and belief, Defendant is a citizen of New Jersey.

8.   Upon information and belief, Defendant is a wholly owned subsidiary of EMR USA Holdings, Inc., a Delaware corporation with principal place of in New Jersey, and EMR USA Holdings Inc. is a member of Defendant LLC, either directly, or indirectly through other members of Defendant's LLC.

9.   Defendant, including its predecessors and agents, maintains and operates the

2

Facility and has exercised control and ownership over the Facility, including the Shredder Facility and the 6th Street Facility, at all relevant times hereto.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action pursuant to N.J. Const. art. VI, § 3, ¶ 2, as this action involves a local controversy in the State of New Jersey. Plaintiffs are citizens of the State of New Jersey, and the unlawful conduct alleged herein by Defendant occurred in the State of New Jersey

11.     The Court has personal jurisdiction over Defendant pursuant to N.J.S.A. 14A:1–1 et seq., and R. 4:4–4(a)(6), and because Defendant is, or was, during the relevant time: licensed to do business in New Jersey; maintained or maintains its principal place of business in New Jersey; is transacting or has transacted substantial business in New Jersey or is otherwise "at home" in New Jersey; is contracting or has contracted to supply services or things in New Jersey; has or does derive substantial revenue from New Jersey or engages in a persistent course of conduct in New Jersey; and/or had or has interests in, used or uses, or possessed or possesses real property in New Jersey. Defendant has sufficient minimum contacts with the State of New Jersey to give rise to the current action, has continuous and systematic contacts with New Jersey, and/or has consented either explicitly or implicitly to the jurisdiction of this Court. Defendant regularly conducts substantial business in New Jersey through its operation and maintenance of the Facility, and Plaintiffs' claims arise through such contacts, acts, and/or omissions that occurred within the State of New Jersey.

12.     Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because Defendant has purposefully availed itself of the laws of the State of New Jersey and it benefits by

3

regularly conducting business through its industrial operations in the state.

13. Venue is proper in Camden County pursuant to R. 4:3-2 because Plaintiffs' claims arose in Camden County, Defendant does business in Camden County, the tortious and/or otherwise unlawful conduct alleged herein occurred in Camden County and the property harm alleged herein to Plaintiffs was caused in Camden County. Additionally, Plaintiffs are residents of this County, where the property harm alleged herein occurred and where the allegedly affected properties are situated.

## FACTUAL ALLEGATIONS

14. Defendant owns and operates a scrap metal recycling facility located at 1400 South Front Street, Camden, New Jersey 08104 ("Shredder Facility") and an associated facility located at 1500 South 6th Street, Camden, New Jersey 08104 ("South 6th Street Facility").

15. Defendant's Facility receives ferrous and non-ferrous metal, vehicles, batteries, appliances, and aluminum.[1]

16. Defendant's Facility utilizes a hammermill shredder to break down larger scrap metal pieces for further processing.

17. Scrap metal recycling facilities like Defendant's process scrap by sorting and stockpiling materials, loading and conveying materials into a hammermill shredder that breaks them apart into a size suitable for further processing, then conveying shredded materials through various separating mechanisms to separate ferrous and non-ferrous metal using magnetic and/or eddy current.[2] The recovered scrap metals are then later sold or further processed by mills, foundries, smelters, and/or metal brokers.

---

[1] https://us.emrlocal.com/yards/emr-Camden-scrap-metal
[2] https://www.epa.gov/system/files/documents/2021-07/metalshredder-enfalert.pdf

18.     Auto and scrap metal shredders like Defendant's are a known source of excess emissions of air pollutants because of the significant amount of non-metal materials, such as plastics, paints, sealants, rubbers, and fluids contained in the scrap.[3] These non-metal materials are vaporized by the extreme heat generated by the shredding process, and are released as fugitive air emissions in the form of Volatile Organic Compounds (VOCs), particulate matter, and other hazardous air pollutants including lead, zinc, cadmium, mercury, and other pollutants.

19.     Failure to remove and recover fluids and other potentially hazardous materials such as gasoline, diesel fuel, oil, antifreeze, brake fluid, transmission fluid, lead-acid batteries, vehicle air bags, capacitors, transformers, mercury-containing switches and light ballasts, tires, compressed gas cylinders, and refrigerant appliances may also create a risk of fires and explosions in the shredding, stockpiling, and recycling processes.[4]

20.     Defendant's Facility is surrounded by residential properties.

21.     Plaintiffs reside within the proposed Class Area.

22.     On frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiffs' properties have been and continue to be physically invaded by noxious Emissions.

23.     The noxious Emissions which entered Plaintiffs' properties originated from Defendant's Facility, where they are generated as a result of Defendant's scrap metal processing operations.

24.     The fugitive odor and particulate emissions caused by Defendant's Facility have been and continue to be dispersed across public and private land in the Class Area.

25.     A properly designed, operated, and maintained scrap metal recycling facility will

---

[3] *Id.*
[4] *Id.*

adequately capture, remove, and dispose of noxious odor and particulate emissions to prevent the release thereof into the ambient air as fugitive emissions.

26.     A properly designed, operated, and maintained scrap metal recycling facility will adequately capture, remove, and dispose of non-metal fluids and materials to prevent the vaporization and subsequent emission thereof into the ambient air as fugitive odor and particulate emissions.

27.     A properly designed, operated, and maintained scrap metal recycling facility will not emit odor, dust, soot, smoke, debris, and fallout into the ambient air as fugitive emissions.

28.     Defendant is required to control its Emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates fugitive Emissions to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available mitigation, elimination, and control systems at the Facility.

29.     Defendant has failed to install, maintain, operate, develop, and/or implement adequate mitigation strategies, processes, technology, and equipment to control its Emissions from the Facility and prevent those Emissions from invading the homes and properties of the Plaintiffs and the putative Class.

30.     Defendant's failures to prevent its offsite Emissions include, but are not limited to:

a.  Operating and maintaining inadequate systems for processing scrap metal;

b.  Operating and maintaining a scrap metal recycling process that inadequately captures, controls, and/or mitigates noxious Emissions;

c.  Failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air;

d.  Failing to develop and/or implement an adequate particulate prevention plan;

6

e.  Failing to utilize other odor, dust, soot, smoke, debris, and fallout elimination, and mitigation measures and technology available to Defendant;

f.  Failing to properly store and stockpile scrap and processed scrap metal and non-metals to prevent the release of Emissions into the ambient air;

g.  Failing to adequately enclose the stored stockpiles of scrap and processed scrap at the Facility to prevent the release of Emissions into the ambient air;

h.  Failing to adequately screen, remove, collect, and/or dispose of non-metals from its materials to prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal;

i.  Failing to adequately implement, maintain, and/or operate a fire suppression system at the Facility to prevent the release of Emissions into the ambient air;

j.  Failing to adequately screen, remove, collect, and/or dispose of batteries and other highly flammable substances from its materials to prevent combustion and prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal; and,

k.  Other failures to be established through discovery.

31.  Defendant has failed to follow proper scrapyard metal recycling practices to prevent the noxious Emissions from invading the homes and properties of the Plaintiffs and the putative Class.

32.  The Emissions from Defendant's Facility are noxious and offensive to the senses.

33.  On multiple occasions, Plaintiffs' properties have been physically invaded by noxious Emissions as a result of Defendant's repeated failures to properly maintain and operate the Facility, and as the result of fires and explosions occurring at Defendant's Facility.

34.  On January 29, 2021, a large fire occurred at Defendant's Shredder Facility located at 1400 South Front Street releasing smoke and metallic odors into the ambient air. As a result of the fire, a neighborhood school, the Sacred Heart School, evacuated and closed due to the emission of smoke and odors. Numerous households within the Class Area were forced to evacuate their homes because of the fire.

7

35.     On February 27, 2021, Defendant's Shredder Facility experienced a fire caused by "automotive fluff" or "automotive shredder residue," releasing smoke into the ambient air.

36.     On February 28, 2022, nearly a year after the previously reported fire, a scrapyard fire at Defendant's South 6th Street Facility sent plumes of black smoke in the air.[5] The fire was reported to have begun in a pile of "shredded residue."



[Side view of February 28, 2022 fire at Defendant EMR Advanced Recycling, LLC's Facility][6]

37.     On July 21, 2022, the City of Camden Fire Department received a report of a "small fire" at Defendant's Shredder Facility.

38.     On July 22, 2022, the City of Camden Fire Department received another report of a "facility fire" that "[m]ay have been a lithium battery that was on fire" at Defendant's South 6th Street Facility.

39.     On October 18, 2022, an incident of "heavy odor" and smoke was reported to have come from Defendant's Shredder Facility. Residents near Defendant's Facility were advised by a local nonprofit to contact Defendant's representative if they were "uncomfortable staying in [their]

---

[5] https://www.courierpostonline.com/story/news/2022/02/28/fire-emr-scrapyard-sends-smoke-billowing-into-camden-neighborhoods-air-pollution-recycling-industry/9321271002/
[6] *Id.*

home tonight due to the smoke."[7] Residents were offered accommodations by Defendant to stay at a local hotel in downtown Camden.

40. On July 29, 2024, Defendant reported yet another fire at Defendant's 6th Street Facility. General Counsel for Defendant, Michael Gross, provided a statement to the press that "The fire occurred in our light iron pile due to the suspected presence of a lithium-ion battery."[8]

41. On February 21, 2025, a four-alarm fire occurred at Defendant's Shredder Facility, which sent billowing black smoke into the ambient air of Camden for several hours, and Camden's Fire Department was engaged in fire suppression efforts that lasted through the next day, February 22, 2025.[9]



[Overhead view of February 21, 2025 fire at Defendant EMR Metal Recycling, LLC's Facility]

42. As a result of Defendant's February 21, 2025, fire, more than 100 families in the

---

[7] https://www.courierpostonline.com/story/news/local/2022/10/19/fluff-fire-ignites-emr-foul-smell-air-camden-nj/69573067007/
[8] https://www.tapinto.net/towns/camden/sections/police-and-fire/articles/emr-recycling-fire-quickly-extinguished-by-camden-firefighters
[9] https://www.cbsnews.com/philadelphia/news/lithium-ion-battery-caused-junkyard-fire-camden-emr-metal-recycling/

neighborhood surrounding its Facility were dislodged and forced to evacuate the area.[10]

43.     The February 21, 2025 fire created a "thick smoke that enveloped the city and could be seen as far as 15 miles away."[11] Camden City Commissioners issued a voluntary shelter in place order that was lifted on February 22, 2025 at noon. The Commissioners stated that the City Fire Department was still addressing smoke spots 20 hours after the fire began. In the public statement, the City further condemned Defendant's actions and that "This kind of fire can never happen again at EMR, and we are going to ensure that it never does."

44.     Following and as a direct result the February 21, 2025 fire, the City of Camden and Defendant entered into a Memorandum of Understanding on August 15, 2025.

45.     As part of the Memorandum of Understanding between the City of Camden and Defendant, Defendant was required to spend approximately $3 million installing a fire suppression system, improve its fire prevention measures, improve its emergency training, reimburse the Camden City Fire Department for damaged equipment, and cease all operations at its 1500 South Sixth Street scrapyard in Camden. Defendant was further required to commit an initial investment of $1 million to fund "essential needs" in the community and make annual donations of $450,000 to local community foundations.

46.     After investigating the February 21, 2025 fire at its Facility, Defendant stated that it was likely caused by a lithium-ion battery.[12]

47.     On August 12, 2025, another fire erupted at Defendant's Shredder Facility.

---

[10] https://www.camdencounty.com/mayor-negotiates-6-7-million-agreement-for-the-residents-of-waterfront-south-with-emr/

[11] https://www.camdencounty.com/statement-from-commissioners-regarding-the-fire-in-south-camden-city-at-the-emr-facility/https://www.camdencounty.com/statement-from-commissioners-regarding-the-fire-in-south-camden-city-at-the-emr-facility/

[12] https://www.cbsnews.com/philadelphia/news/lithium-ion-battery-caused-junkyard-fire-camden-emr-metal-recycling/

10

48.    On October 17, 2025, another fire was sent ablaze at Defendant's South 6th Street Facility.

49.    On February 26, 2026, another fire erupted at Defendant's Facility.[13] During the extinguishing of the fires, neighbors of Defendant's Facility were urged to avoid the area.



[Overhead view of February 26, 2026 fire at Defendant EMR Metal Recycling, LLC's Facility]

50.    On May 29, 2026, another fire erupted at Defendant's Shredder Facility, which caused Defendant to pause shredding operations pending review of the root cause. Like more than a dozen prior fires, the fire send smoke plumes billowing across a wide area and led city officials to advise residents against being outdoors and for others to avoid the area.[14]

51.    Defendant's Facility has caused numerous fires and explosions, which in turn have released noxious Emissions in the form of soot, smoke, debris, and fallout into the neighboring properties and have at times forced owner-occupants and renters of residential property within the

---

[13] https://www.msn.com/en-us/weather/topstories/firefighters-battle-another-fire-at-emr-junkyard-in-camden-nj-on-thursday/ar-AA1X9UsL?ocid=BingNewsSerp
[14] https://www.courierpostonline.com/story/news/health/2026/05/29/emr-recycling-fire-camden-fire-air-quality-alert-emr-lawsuit-recyling-plant-fire/90310589007/

putative Class Area to evacuate their homes.

52.     Separately and in addition to the above fires and explosions, Defendant's Facility has released noxious Emissions as a result of its improper operation and maintenance of the Facility on occasions too numerous to list herein.

53.     Defendant's fires and Emissions were preventable through reasonable care and diligence.

54.     As a result of Defendant's negligent operation and/or maintenance of its Facility, including but not limited to the failure to collect, remove, and dispose of flammable materials and conditions within its scrap metal processing, Defendant has released noxious Emissions and has caused fires.

55.     As a foreseeable, direct, and proximate result of Defendant's fires, noxious Emissions have physically invaded Plaintiffs' properties on numerous occasions, thereby causing damages.

56.     As a foreseeable, direct, and proximate result of Defendant's failures to properly operate and maintain its Facility, noxious Emissions have physically invaded Plaintiffs' properties on numerous occasions, thereby causing damages.

57.     Numerous households have contacted Plaintiffs' counsel documenting the Emissions they attribute to Defendant's Facility.

58.     Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the fugitive Emissions, which have caused damages to neighboring properties.

    a.  Plaintiff Sandra Wiles stated that "The air quality was really bad, couldn't use my air conditioning or open windows and it affected my asthma. Couldn't' take my pets outdoors for bathroom purposes. Had to stay with my sister for 3 days."

12

b. Plaintiff Celestine Wallace indicated that "The air inside my home became unbearable at times, forcing me to take costly measures to protect my health and property. I have had to remodel parts of my home, install new windows, and invest in air purifiers in order to make the air inside my home safer to breathe. The situation has caused me significant stress, financial burden, and concern for my long-term health and well-being. No resident should have to live under these conditions or bear these costs due to environmental hazards in their neighborhood."

c. Plaintiff Deandra Smith reported that "Soot has accumulated on step and roof. We were evacuated in Feb 2025 for the big fire had to stay at hotel."

d. Putative Class Member Amarilys Miranda stated that "We usually smell burning metal in the mornings the smell is strong to the point no one should be outside more than 5-10 minutes at a time and when its warm outside its 10x worse. I noticed soot on our streets and on the cars at times when its dry/hot weather. I don't let my girls play outside when its bad!"

e. Putative Class Member Mayra Tomas reported that "The odor was so strong that I had to stay indoors my porch had soot also my porch windows had to be cleaned."

59.     Defendant's well documented pattern of failing to control its Emissions is further demonstrated by the extensive administrative enforcement record of the Facility, verified by independent government investigations by the New Jersey Department of Environmental Protection (NJDEP).

60.     On July 23, 2020, Defendant was issued a notice of violation (NOV) by NJDEP for failing to obtain a preconstruction permit for a significant air contaminant source emission. The violation was described by NJDEP as follows:

a. "You installed a material handling source operation that emits one or more air contaminants directly to the outdoor air without first obtaining a Preconstruction Permit for the significant source operation. Specifically, you installed material handling equipment at the Kaighn Ave staging yard area of your facility, including but not limited to, front end loaders, industrial claw grabber, and industrial magnet that process in excess of 50 pounds of scrap metal (and/or non-metal scrap fluff) in any one hour."

13

61.     On December 7, 2020, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to store residues separately from recyclable material and in a manner that prevents run-off, leakage or seepage from the residue storage area into, on or around the soil of the residue storage area." Defendant was cited for the same violation again on December 9, 2020 and December 15, 2020.

62.     On December 8, 2020, Defendant was issued an NOV by NJDEP for failing to obtain a solid waste facility (SWF) permit prior to constructing and operating a solid waste facility on the Facility's premises, including failing to submit and obtain the Department's approval for a quality control plan and a sampling and analytical plan.

63.     On January 13, 2021, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to store residues separately from recyclable material and in a manner that prevents run-off, leakage or seepage from the residue storage area into, on or around the soil of the residue storage area."

64.     On March 12, 2021, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to ensure an adequate water supply and fire-fight equipment were readily available to extinguish any fires." Defendant's Facility and its related activities also "were not in conformance with municipal ordinances, including, but not limited to ordinances concerning ingress and egress, traffic patterns, parking, signage, operational hours, noise, dust, and structure height." Defendant also stored residues for more than six months, violating N.J.A.C. 7:26A- 4.1(a)2.

65.     On June 25, 2021, Defendant was issued an NOV by NJDEP for failing to obtain a solid waste facility permit prior to constructing and operating a solid waste facility on the Facility's premises. "Specifically, facility has stored an ASR pile on site for longer than 6 months.

14

Photographic evidence was taken from inside and outside the facility." Defendant also stored residues for more than six months, violating N.J.A.C. 7:26A- 4.1(a)2.

66.     In relation to the fires caused by Defendant's Facility on November 29, 2020 and January 29, 2021, Defendant entered into a settlement agreement with NJDEP on October 25, 2023 and was assessed a $7,600 penalty and a $89,750 fine from the County Health Department Hazmat division.[15] Defendant's violations were described as:

    a.  "On January 29, 2021, you caused the release of one or more air contaminants, in a quantity or concentration which posed a potential threat to the public health, welfare or the environment or may have reasonably resulted in citizen complaints and failed to notify the Department immediately."

    b.  "On November 29, 2020, you caused the release of one or more air contaminants, in a quantity or concentration which posed a potential threat to the public health, welfare or the environment or may have reasonably resulted in citizen complaints and failed to notify the Department immediately."

    c.  "You permitted smoke and odors from the shredded material fluff pile fire on January 29, 2021 to be emitted into the outdoor atmosphere in quantities which resulted in air pollution."

67.     Following the numerous fires, a dozen over the last five years, the State of New Jersey and the NJDEP filed a civil lawsuit on January 12, 2026, alleging public nuisance counts against Defendant and its other EMR affiliates for the frequent smoke, fires, and air pollution emitted from its Facility and other facilities in New Jersey.

68.     Defendant's Facility has repeatedly emitted objectionable noxious odors and fugitive dust, soot, debris, smoke, and fallout that were detectable outside the bounds of its property.

---

[15] https://www.tapinto.net/towns/camden/sections/business-and-finance/articles/emr-fined-97k-after-january-fire-sent-heavy-smoke-into-camden-neighborhoods

15

69. The Facility's noxious Emissions have caused negative impacts to its neighbors, including lost use and enjoyment of private residential property and adverse impacts on residential property values.

70. Defendant has repeatedly been cited by regulators for failing to operate the Facility in accordance with its duty to control fugitive Emissions, discharging these Emissions into the surrounding community.

71. Defendant's noxious Emissions are continuing; Defendant has failed to cease the noxious Emissions, despite knowledge, and despite the Emissions being abatable with reasonable care and diligence.

72. The noxious Emissions from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

73. Plaintiffs and the putative class are a limited subset of individuals in Camden and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

74. The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, recreational areas, dining, healthcare and social services, education, and ministry.

75. Members of the public, including but not limited to business owners, employees, commuters, visitors, customers, patients, clients, students, and worshippers, have experienced and been harmed by the fugitive noxious emissions from the Facility into public spaces; however, unlike Plaintiffs and the putative class, members of the public who are outside of the Class

Definition have not suffered damages of the same kind, in the form of adversely impacted property values and/or loss of use and enjoyment of their private property.

76.    The invasion of Plaintiffs' property and that of the Class by noxious odors and air particulates has negatively impacted the value of and interfered with the use and enjoyment of those properties, resulting in property damages.

## CLASS ALLEGATIONS

### *Class Definition*

77.    Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Rule 4:32 of the New Jersey Court Rules. Plaintiffs seek to represent a Class of persons defined as:

**All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the following geographical area:**

> **Starting at Spruce Street and S 9th Street, proceed south on S 9th Street. At Sycamore Street continue east to S 10th Street. Follow S 10th Street south to Mechanic Street. Go east on Mechanic Street and then continue south on S 10th Street. At Bulson Street go west and continue to the railroad track following them northeast to Jefferson Street. Proceed east on Jefferson Street to the Delaware River. Follow the river front north to Spruce Street. Follow Spruce Street west to the point of origin.**

**The Class Area is further depicted in the map below:**

17



The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members").

78. Plaintiffs further propose the following <u>Evacuation Subclass</u>, which they seek to represent, defined as:

> **All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the Class Area that have been forced to evacuate their homes in response to fires at Defendant's Facility.**

**The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Evacuation Subclass ("Evacuation Subclass Members").**

79. This case is properly maintainable as a class action pursuant to an in accordance with Rule 4:32 of the New Jersey Court Rules in that:

    a. The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b. There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

    c. Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

18

d.     A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

e.     The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

f.     There are no unusual difficulties foreseen in the management of this class action; and,

g.     Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

## A. Numerosity

80.     Based on available data, there are thousands of residential households within the Class Area and therefore is so numerous that joinder is impracticable.

## B. Commonality

81.     Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including, but not limited to the following:

a.     Whether and how Defendant negligently and knowingly failed to reasonably maintain and operate the Facility to prevent offsite Emissions;

b.     Whether Defendant owed any duties to Plaintiffs;

c.     Which duties Defendant owed to Plaintiffs;

d.     Which steps Defendant has and has not taken to control its Emissions through the maintenance and operation of its Facility;

e.     Whether and to what extent the Facility's Emissions were dispersed over the Class Area;

f.     Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Facility would result in an invasion of Plaintiffs' property interests;

g.     Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference under an objective legal standard; and,

h.    The proper measure of damages incurred by Plaintiffs and the Class.

## C. Typicality

82.    Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

83.    The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly repair, maintain and operate the Facility.

84.    Class Members have similar injuries to the Plaintiffs as a result of the invasion of their properties by Defendant's release of Emissions causing damage to their properties.

## D. Adequacy of Representation

85.    Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care.

86.    Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

87.    Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of Emissions originating from Defendant's Facility.

88.    Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from the offsite emission of air pollution from industrial facilities.

89.     Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**E. Class Treatment is the Superior Method of Adjudication**

90.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a.     Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudication with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

b.     Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

c.     The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and,

d.     The proposed class action is manageable.

91.     Further, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

92.     Notice can be provided to members of the Class by U.S. Mail and/or publication.

### CAUSE OF ACTION ONE – PRIVATE NUISANCE

93.     Plaintiffs restate the allegations of this Complaint as if fully restated herein.

94.     The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

95.     The Emissions which entered the Plaintiffs' and Class's properties originated from the Facility, which was improperly and unreasonably maintained and/or operated by the

21

Defendant.

96.     The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

97.     The noxious Emissions which entered the Plaintiffs' and Class's properties originated from the Defendant's Facility, which is in close proximity to the Class Area.

98.     By failing to reasonably design, operate, repair, and maintain its Facility, the Defendant has caused an invasion of the Plaintiffs' and Class's properties by its Emissions on unusually frequent occasions that are too numerous to comprehensively list herein.

99.     The noxious Emissions invading the Plaintiffs' and Class's properties are indecent and offensive to individuals with ordinary sensibilities. The noxious Emissions substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and the ability to use and enjoy their properties. This includes, but is not limited to:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties;

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes; and,

e) Forcing Plaintiffs and Class Members to evacuate their homes entirely for extended periods of time.

100.     By failing to reasonably repair, maintain, and/or operate its Facility, the Defendant has wrongfully, negligently, and knowingly created a foreseeable risk of harm and caused an

22

unreasonable invasion of the Plaintiffs' and Class's properties by noxious odors and air particulates.

101.    Defendant's nuisance is recurring and ongoing.

102.    Defendant's nuisance is abatable.

103.    By failing to reasonably repair, maintain, and/or operate the Facility, thereby causing noxious Emissions to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class's properties.

104.    The Defendant owed, and continues to owe, a duty to Plaintiffs and the putative Class to prevent and abate the unreasonable interference with the invasion of their private property interests.

105.    As a result of the forgoing misconduct by the Defendant, the Plaintiffs and Class suffered, and continue to suffer, damages to their properties as alleged herein.

106.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's Emissions, which is ongoing and constitutes a nuisance.

107.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

108.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

23

## CAUSE OF ACTION TWO – PUBLIC NUISANCE

109.     Plaintiffs restate the allegations of this Complaint as if fully restated herein.

110.     Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

111.     Plaintiffs and the putative class are a limited subset of individuals in Camden County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

112.     The Emissions that entered Plaintiffs and the Class's properties originated from Defendant's Facility, which is in close proximity to the proposed Class Area.

113.     The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, dining, recreation, healthcare, education, and ministry.

114.     By failing to reasonably operate, repair, and/or maintain the Facility, Defendant has caused an invasion of Plaintiffs' property by noxious Emissions on frequent occasions that are too numerous to individually list herein.

115.     The noxious Emissions that invade the Plaintiffs' and the Class's properties are indecent and offensive to the Plaintiffs and Class, and they are indecent and offensive to individuals with ordinary sensibilities. The noxious Emissions substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and their ability to use and enjoy their properties. This includes, but is not limited to:

a)   Forcing Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b)   Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

24

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties;

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes; and,

e) Forcing Plaintiffs and Class Members to evacuate their homes entirely for extended periods of time.

116. Due to the Defendant's Facility Emissions, the Plaintiffs and the Class have suffered, and continue to suffer, special harm relating to the use and enjoyment of their lands and properties, and decreased property values.

117. Separate and apart from the private property damage incurred by the Plaintiffs and the Class, the Defendant's Emissions have substantially interfered with rights common to the general public, including the right to breathe clean air.

118. The injuries to the Plaintiffs' and Class's properties and the harmed rights associated with those properties are separate and different in kind from the harm caused by Defendant to the public at-large and/or other private individuals not within the Class definition.

119. As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

120. The damages suffered by the Plaintiffs and the Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their land and property, and decreased property values, which are not harms suffered by the general public.

121. The general public is also impacted by the Facility's noxious Emissions when they work, worship, commute, study, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property or adversely impacted property values.

25

The harm to the general public is separate and apart from the harm to private property experienced by Plaintiffs and the Class.

122.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious Emissions, which is ongoing and constitutes a nuisance.

123.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

124.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties arises from a public nuisance, from which the Plaintiffs and Class have uniquely suffered. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION THREE – NEGLIGENCE

125.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

126.    The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Facility in a reasonable manner and to take reasonable steps to prevent and abate the fugitive emission of noxious odors and air particulates from the Facility.

127.    A properly operated and maintained Facility will not emit noxious Emissions into neighboring residential areas.

128.    The Defendant breached its duties by negligently and improperly maintaining and operating the Facility. By failing to properly maintain and operate its Facility, the Defendant failed to exercise the duty of ordinary care and diligence.

129.    Defendant's breach is demonstrated by its extensive administrative violations, and in the following operational failures:

26

a.  Operating and maintaining inadequate systems for processing scrap metal;

b.  Operating and maintaining a scrap metal recycling process that inadequately captures, controls, and/or mitigates odor and particulate emissions;

c.  Failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air;

d.  Failing to develop and/or implement an adequate particulate prevention plan;

e.  Failing to utilize other odor and particulate prevention, elimination, and mitigation measures and technology available to Defendant;

f.  Failing to properly store and stockpile scrap and processed scrap metal and non-metals to prevent the release of odor and particulate emissions into the ambient air;

g.  Failing to adequately enclose the stored stockpiles of scrap and processed scrap at the Facility to prevent the release of Emissions into the ambient air;

h.  Failing to adequately screen, remove, collect, and/or dispose of non-metals from its materials to prevent the release of offsite odors and air particulates through the Facility's shredding and processing of scrap metal;

i.  Failing to adequately implement, maintain, and/or operate a fire suppression system at the Facility to prevent the release of Emissions into the ambient air;

j.  Failing to adequately screen, remove, collect, and/or dispose of batteries and other highly flammable substances from its materials to prevent combustion and prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal; and,

k.  Other failures that have yet to be discovered.

130.  The Defendant's negligent and improper maintenance of its Facility is the direct and proximate cause of the invasion of noxious Emissions upon the Plaintiffs' and Class's homes, land, and properties on occasions too numerous to mention individually.

131.   By failing to maintain and/or operate the Facility, the Defendant negligently, knowingly, intentionally, and recklessly caused the invasion of the Plaintiffs' property by noxious Emissions.

132. Such invasions by noxious Emissions were the foreseeable result of the foregoing misconduct by the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. This includes the loss of use and enjoyment of their properties and the diminution of property values, and other losses to be proven at trial.

133. Defendant could reasonably anticipate that the invasion of the Facility's noxious Emissions upon the Plaintiffs' and the Class's properties would result in property damages in the form of the loss of use and enjoyment and the diminution of property values.

134. Defendant is liable for all damages arising from such negligence, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION FOUR – TRESPASS

135. Plaintiffs restate the allegations of this Complaint as if fully restated herein.

136. Defendant intentionally recklessly, willfully, and/or negligently failed to properly construct, maintain, and/or operate the Facility which caused fugitive Emissions including odors, dust, soot, smoke, debris, and fallout to physically invade upon Plaintiffs' property on occasions too numerous to identify independently.

137. As a direct and proximate result of Defendant's conduct, fugitive Emissions physically invaded, entered upon, settled upon, and accumulated upon Plaintiffs' property.

138. It was reasonably foreseeable that Defendant's failure to properly maintain and/or operate the Facility would result in an invasion of Plaintiffs' property by fugitive Emissions.

139. The fugitive Emissions that have been and continue to be emitted by Defendant's Facility have invaded and continue to invade Plaintiffs' property and interferes with Plaintiffs' interests in the exclusive possession, use, and enjoyment of their property and constitutes a trespass thereupon.

140.    Plaintiffs did not consent to the physical invasion of their property by fugitive Emissions.

141.    Defendant's actions resulting in trespass upon Plaintiffs' land were and continue to be intentional, willful, and made with conscious disregard for the rights of Plaintiffs, entitling Plaintiffs and the Class to all damages arising therefrom, including compensatory, injunctive, exemplary, and/or punitive relief.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class by order pursuant to Rule 4:32 of the New Jersey Court Rules;

B. Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and the Class Members as against the Defendant for each cause of action stated herein;

D. An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E. An award of attorneys' fees and costs, including pre- and post-judgement interest as allowable by law;

F. An Order holding that the entrance of the aforementioned noxious Emissions upon the Plaintiffs' and Class's properties constitutes a nuisance;

G. An Order holding that Defendant was negligent in causing noxious Emissions to repeatedly invade and interfere with the Plaintiffs' and the Class's private residential properties;

H. An Order holding that the entrance of the aforementioned noxious Emissions upon the Plaintiffs' and Class's properties constitutes a trespass;

29

I.   An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and,

J.   Such further relief, both general and specific, that this Honorable Court deems just and proper.

**JURY DEMAND**

The Plaintiffs respectfully demands a trial by jury on all issues raised in this Complaint.

Date:__6/17/2026_____                    Respectfully submitted,

                                                *Kevin Riechelson*

                                                _____
                                                Kevin S. Riechelson
                                                **COHEN & RIECHELSON**
                                                3500 Quakerbridge Road, Suite 203
                                                Hamilton, New Jersey, 08619
                                                Tel: (609) 394-8585| Fax: (609) 394-8620
                                                KRiechelson@crlawoffices.com

                                                */s/ Steven D. Liddle*

                                                Steven D. Liddle*
                                                Laura L. Sheets*
                                                Matthew Z. Robb*
                                                **LIDDLE SHEETS P.C.**
                                                975 E. Jefferson Ave.
                                                Detroit, MI  48207
                                                (313) 392-0015
                                                sliddle@lsclassaction.com
                                                lsheets@lsclassaction.com
                                                mrobb@lsclassaction.com
                                                *Pro Hac Vice Motions to be submitted*
                                                *Attorneys for Plaintiffs*

30

CAMDEN COUNTY SUPERIOR COURT
101 S FIFTH STREET
SUITE 150
CAMDEN            NJ 08103

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (856) 650-9100
COURT HOURS  8:30 AM - 4:30 PM

DATE:    JUNE 17, 2026
RE:      WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC
DOCKET:  CAM L -002142 26

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:  HON FRANK C. TESTA

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM    301
AT:  (856) 650-9100 EXT 44248.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

ATTENTION:

ATT: KEVIN S. RIECHELSON
COHEN & RIECHELSON
3500 QUAKERBRIDGE RD
STE 203
HAMILTON        NJ 08619

ECOURTS

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**NOTICE OF MOTION TO ADMIT STEVEN D. LIDDLE, ESQ.** *PRO HAC VICE* |

**PLEASE TAKE NOTICE**, that on July 17, 2026 at 9:00 a.m. in the forenoon or as soon thereafter as counsel may be heard, the undersigned, attorney for the Plaintiff, shall apply to the Court for an Order to admit *pro hac vice* Steven D. Liddle, Esq. to act as lead counsel in this particular case with the assistance of licensed New Jersey attorney Kevin S. Riechelson.

**PLEASE TAKE FURTHER NOTICE** that plaintiff shall rely upon the enclosed certification of Steven D. Liddle, Esq.

Pursuant to R. 1:6-2, the undersigned waives oral argument and consents to disposition on papers.

**Date:  June 22, 2026**                    *Kevin Riechelson*

                                             Kevin S. Riechelson, Esq.

## CERTIFICATION OF SERVICE

I hereby certify that the within Notice of Motion to Admit Steven D. Liddle, Esq. *Pro Hac Vice* was sent for filing with the Clerk of Camden County via electronic filing.  I further certify that copies of the Notice and all supporting papers were served via electronic filing and email upon all known attorneys of record, and certified and regular mail to all parties not on ecourts.

**COHEN & RIECHELSON**
Attorney for Plaintiff

Dated:  June 22, 2026                    By:   *Kevin Riechelson*
                                               Kevin S. Riecheslon, Esq.

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

|  |  |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**ORDER** |

**THIS MATTER** having come before the Court upon application by Kevin S. Riechelson, Esq., attorney for plaintiff, and the Court having reviewed the moving papers and opposition submitted, if any, and for good cause having been shown:

**IT IS** on this _____ day of _____, 2025;

**ORDERED** that attorney Steven D. Liddle, Esq. is hereby appointed *pro hac vice* to act as trial counsel in the above matter; the Plaintiffs in this matter, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Mr. Liddle represents them as lead counsel in this matter; it is further,

**ORDERED** that attorney Steven D. Liddle, Esq. shall abide by the New Jersey Rules of Court, including all disciplinary rules; and it is further

**ORDERED** that attorney Steven D. Liddle, Esq. consents to the appointment of the Clerk of the Superior Court as agent upon whom service of process may be made for all actions against him or his law firm that may arise out of their participation in this matter; and it is further

**ORDERED** that attorney Steven D. Liddle, Esq. shall notify the court immediately of any matter affecting his standing at the bar of any other court; and it is further

**ORDERED** that attorney Steven D. Liddle, Esq. shall have all pleadings, briefs and other papers filed with the court signed by Kevin S. Richelson, Esq., as the attorney of record who is authorized to practice in this State, and who shall be held responsible for him and for the conduct of the cause and of attorney Kevin S. Riechelson; and it is further

**ORDERED** that a copy of this Order be served upon all counsel of record within _____ days of the date hereof.

_____
Hon. _____ , J.S.C.

_____ Opposed

_____ Unopposed

**COHEN & RIECHELSON**
**BY:     KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

|  |  |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**CERTIFICATION OF STEVEN D. LIDDLE** |

1.      I am Steven D. Liddle, an attorney at law in the State of Michigan (P45110), where I am domiciled and principally practice law. I submit this Certification in support of the motion requesting my admission *pro hac vice* to act as counsel pursuant to R. 1:21-2, to represent Plaintiffs Sandra Wiles, Celestine Wallace and Deandra Smith in the above-captioned action. I have full knowledge of the facts set forth herein.

2.      I am a licensed attorney in the State of Michigan, and I am a member in good standing of the State Bar of Michigan, the bar of the highest court in the State of Michigan.

3.      I am associated in this matter with Kevin Riechelson, Esq. (N.J. ID.#0201391990), of Cohen & Riechelson, who is New Jersey counsel of record and qualified to practice in the State

1

of New Jersey pursuant to R. 1:21-1. I, and my firm, will continue to be associated with Mr. Riechelson and his firm throughout the matter.

4.      The Plaintiffs, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that I and my firm of Liddle Sheets P.C. ("LS") in Detroit, Michigan, represent them in this matter.

5.      No disciplinary proceedings are pending against me in any jurisdiction, and no discipline has previously been imposed against me in any jurisdiction.

6.      I understand that, if admitted *pro hac vice*, I have the continuing obligation during the period of my admission regarding the institution of any new disciplinary proceedings that may arise.

7.      The above captioned case is a proposed class action alleging that the Defendant's recycling facility emits, and continues to emit, widespread noxious odors that have impacted numerous neighboring residents' property rights.

8.      I and my firm devote the vast majority our legal practice to litigating class actions. Specifically, I and LS devote a substantial majority of our practice to litigating similarly complex class actions involving allegations of noxious air pollution from industrial facilities that adversely impact the property rights of neighboring residents.

9.      I and my firm have extensive experience in this type of litigation, which is a niche area of law. I and the other attorneys at LS are among the few, if any, practitioners nationwide that devote such a significant portion of our practice to this type of case. It is my belief that there is a lack of local counsel with adequate expertise in the niche field of law involved in this case.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: __6/19/26__

_____
Steven D. Liddle, Esq.

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**CERTIFICATION OF KEVIN S. RIECHELSON IN SUPPORT OF MOTION TO ADMIT STEVEN D. LIDDLE *PRO HAC VICE*** |

1.      I am Kevin Riechelson, an attorney at law in the State of New Jersey and I represent Plaintiffs Sandra Wiles, Celestine Wallace and Deandra Smith in the above-captioned action.  As attorney of record from the inception of this action, I have full knowledge of the facts set forth below.

2.      I am a licensed attorney in the State of New Jersey, and I am qualified to practice pursuant to R. 1:21-1.

3.      I submit this Certification in support of my firm's motion requesting that Steven D. Liddle, Esq. be admitted *pro hac vice* to act as counsel in the above-captioned case pursuant to R.

1

1:21-2. I have consulted with Mr. Liddle about the circumstances surrounding this matter. Accordingly, he is familiar with the facts of this case.

4. The Plaintiffs, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Mr. Liddle's firm of Liddle Sheets P.C. ("LS"), a class action law firm located in Detroit, Michigan, represent them as lead counsel in this matter.

5. Mr. Liddle is associated with I and my firm in this matter and will continue to be associated with I and my firm throughout the matter.

6. Mr. Liddle is domiciled in the state of Michigan. Mr. Liddle is an attorney in good standing of the State Bar of Michigan, the highest court of the state in which Mr. Liddle is domiciled and practices law.

7. No disciplinary proceedings are pending against Mr. Liddle in any jurisdiction, and no discipline has previously been imposed against Mr. Liddle in any jurisdiction.

8. The above captioned case is a proposed class action alleging that the Defendant's recycling facility emits, and continues to emit, widespread noxious odors that have impacted numerous neighboring residents' property rights. It is my belief that this complex case is outside of the ken of most civil practitioners and requires knowledgeable and experienced attorneys in this niche field of practice.

9. LS and Mr. Liddle devote their practice to litigating class actions. Specifically, LS and Mr. Liddle devote a substantial majority of their practice to litigating similarly complex class actions involving allegations of noxious air pollution from industrial facilities that adversely impact the property rights of neighboring residents.

10. Mr. Liddle and his firm have extensive experience in this type of litigation, which is a niche area of law. Mr. Liddle and the attorneys at LS are among the few, if any, practitioners

2

nationwide that devote such a significant portion of their practice to this type of case. It is my belief that there is a lack of local counsel with adequate expertise in the niche field of law involved in this case.

11.     Mr. Liddle's involvement at this point in the case is crucial so that LS can participate in the discovery process, class certification proceedings, and then the trial of this matter.

12.     Accordingly, Plaintiff respectfully requests that this motion be granted so that he may be represented by experienced counsel of their choice.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 22, 2026                                 *Kevin Riechelson*
                                                     Kevin S. Riechelson, Esq.

3

**COHEN & RIECHELSON**
**BY:    KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**NOTICE OF MOTION TO ADMIT LAURA L. SHEETS, ESQ.** *PRO HAC VICE* |

**PLEASE TAKE NOTICE**, that on July 17, 2026 at 9:00 a.m. in the forenoon or as soon thereafter as counsel may be heard, the undersigned, attorney for the Plaintiff, shall apply to the Court for an Order to admit *pro hac vice* Laura L. Sheets, Esq. to act as lead counsel in this particular case with the assistance of licensed New Jersey attorney Kevin S. Riechelson.

**PLEASE TAKE FURTHER NOTICE** that plaintiff shall rely upon the enclosed certification of Laura L. Sheets, Esq.

Pursuant to R. 1:6-2, the undersigned waives oral argument and consents to disposition on papers.

Date:   June 22, 2026

*Kevin Riechelson*

Kevin S. Riechelson, Esq.

## CERTIFICATION OF SERVICE

I hereby certify that the within Notice of Motion to Admit Laura L. Sheets, Esq. *Pro Hac Vice* was sent for filing with the Clerk of Camden County via electronic filing.  I further certify that copies of the Notice and all supporting papers were served via electronic filing and email upon all known attorneys of record, and certified and regular mail to all parties not on ecourts.

**COHEN & RIECHELSON**
Attorney for Plaintiff

Dated: June 22, 2026      By:    *Kevin Riechelson*

Kevin S. Riecheslon, Esq.

2

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

<table>
<tr>
<td>

SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,

             Plaintiff,

vs.

EMR ADVANCED RECYCLING, LLC,

             Defendant.

</td>
<td>

SUPERIOR COURT OF NEW JERSEY
CAMDEN COUNTY – CIVIL
DIVISION

CIVIL ACTION

DOCKET NUMBER: CAM L-002142-26

**ORDER**

</td>
</tr>
</table>

       **THIS MATTER** having come before the Court upon application by Kevin S. Riechelson, Esq., attorney for plaintiff, and the Court having reviewed the moving papers and opposition submitted, if any, and for good cause having been shown:

       **IT IS** on this _____ day of _____, 2026;

       **ORDERED** that attorney Laura L. Sheets, Esq. is hereby appointed *pro hac vice* to act as trial counsel in the above matter; the Plaintiffs in this matter, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Ms. Sheets represents them as lead counsel in this matter; it is further,

       **ORDERED** that attorney Laura L. Sheets, Esq. shall abide by the New Jersey Rules of Court, including all disciplinary rules; and it is further

**ORDERED** that attorney Laura L. Sheets, Esq. consents to the appointment of the Clerk of the Superior Court as agent upon whom service of process may be made for all actions against her or her law firm that may arise out of their participation in this matter; and it is further

**ORDERED** that attorney Laura L. Sheets, Esq. shall notify the court immediately of any matter affecting her standing at the bar of any other court; and it is further

**ORDERED** that attorney Laura L. Sheets, Esq. shall have all pleadings, briefs and other papers filed with the court signed by Kevin S. Richelson, Esq., as the attorney of record who is authorized to practice in this State, and who shall be held responsible for her and for the conduct of the cause and of attorney Kevin S. Riechelson; and it is further

**ORDERED** that a copy of this Order be served upon all counsel of record within _____ days of the date hereof.

_____
Hon.                                    , J.S.C.

_____ Opposed

_____ Unopposed

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

|  |  |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION |
| Plaintiff, | CIVIL ACTION |
| vs. | DOCKET NUMBER: CAM L-002142-26 |
| EMR ADVANCED RECYCLING, LLC, | **CERTIFICATION OF LAURA L. SHEETS** |
| Defendant. |  |

1.      I am Laura L. Sheets, an attorney at law in the State of Michigan (P63270), where I am domiciled and principally practice law. I submit this Certification in support of the motion requesting my admission *pro hac vice* to act as counsel pursuant to R. 1:21-2, to represent Plaintiffs Sandra Wiles, Celestine Wallace and Deandra Smith in the above-captioned action.  I have full knowledge of the facts set forth herein.

2.      I am a licensed attorney in the State of Michigan, and I am a member in good standing of the State Bar of Michigan, the bar of the highest court in the State of Michigan.

3.      I am associated in this matter with Kevin Riechelson, Esq. (N.J. ID.#0201391990), of Cohen & Riechelson, who is New Jersey counsel of record and qualified to practice in the State

1

of New Jersey pursuant to R. 1:21-1. I, and my firm, will continue to be associated with Mr. Riechelson and his firm throughout the matter.

4.      The Plaintiffs, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that I and my firm of Liddle Sheets P.C. ("LS") in Detroit, Michigan, represent them in this matter.

5.      No disciplinary proceedings are pending against me in any jurisdiction, and no discipline has previously been imposed against me in any jurisdiction.

6.      I understand that, if admitted *pro hac vice*, I have the continuing obligation during the period of my admission regarding the institution of any new disciplinary proceedings that may arise.

7.      The above captioned case is a proposed class action alleging that the Defendant's recycling facility emits, and continues to emit, widespread noxious odors that have impacted numerous neighboring residents' property rights.

8.      I and my firm devote the vast majority our legal practice to litigating class actions. Specifically, I and LS devote a substantial majority of our practice to litigating similarly complex class actions involving allegations of noxious air pollution from industrial facilities that adversely impact the property rights of neighboring residents.

9.      I and my firm have extensive experience in this type of litigation, which is a niche area of law. I and the other attorneys at LS are among the few, if any, practitioners nationwide that devote such a significant portion of our practice to this type of case. It is my belief that there is a lack of local counsel with adequate expertise in the niche field of law involved in this case.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 6/19/26

Laura L. Sheets, Esq.

3

**COHEN & RIECHELSON**
**BY:    KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**CERTIFICATION OF KEVIN S. RIECHELSON IN SUPPORT OF MOTION TO ADMIT LAURA L. SHEETS *PRO HAC VICE*** |

1.      I am Kevin Riechelson, an attorney at law in the State of New Jersey and I represent Plaintiffs Sandra Wiles, Celestine Wallace and Deandra Smith in the above-captioned action.  As attorney of record from the inception of this action, I have full knowledge of the facts set forth below.

2.      I am a licensed attorney in the State of New Jersey, and I am qualified to practice pursuant to R. 1:21-1.

3.      I submit this Certification in support of my firm's motion requesting that Laura L. Sheets, Esq. be admitted *pro hac vice* to act as counsel in the above-captioned case pursuant to R.

1

1:21-2. I have consulted with Ms. Sheets about the circumstances surrounding this matter. Accordingly, he is familiar with the facts of this case.

4.      The Plaintiffs, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Ms. Sheets' firm of Liddle Sheets P.C. ("LS"), a class action law firm located in Detroit, Michigan, represent them as lead counsel in this matter.

5.      Ms. Sheets is associated with I and my firm in this matter and will continue to be associated with I and my firm throughout the matter.

6.      Ms. Sheets is domiciled in the state of Michigan. Ms. Sheets is an attorney in good standing of the State Bar of Michigan, the highest court of the state in which Ms. Sheets is domiciled and practices law.

7.      No disciplinary proceedings are pending against Ms. Sheets in any jurisdiction, and no discipline has previously been imposed against Ms. Sheets in any jurisdiction.

8.      The above captioned case is a proposed class action alleging that the Defendant's recycling facility emits, and continues to emit, widespread noxious odors that have impacted numerous neighboring residents' property rights. It is my belief that this complex case is outside of the ken of most civil practitioners and requires knowledgeable and experienced attorneys in this niche field of practice.

9.      LS and Ms. Sheets devote their practice to litigating class actions. Specifically, LS and Ms. Sheets devote a substantial majority of their practice to litigating similarly complex class actions involving allegations of noxious air pollution from industrial facilities that adversely impact the property rights of neighboring residents.

10.      Ms. Sheets and her firm have extensive experience in this type of litigation, which is a niche area of law. Ms. Sheets and the attorneys at LS are among the few, if any, practitioners

2

nationwide that devote such a significant portion of their practice to this type of case. It is my belief that there is a lack of local counsel with adequate expertise in the niche field of law involved in this case.

11.     Ms. Sheets' involvement at this point in the case is crucial so that LS can participate in the discovery process, class certification proceedings, and then the trial of this matter.

12.     Accordingly, Plaintiff respectfully requests that this motion be granted so that she may be represented by experienced counsel of their choice.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 22, 2026                              *Kevin Riechelson*
                                                  Kevin S. Riechelson, Esq.

**COHEN & RIECHELSON**
**BY: KEVIN S. RIECHELSON**
**I.D.#: 0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION |
| Plaintiff, | CIVIL ACTION |
| vs. | DOCKET NUMBER: CAM L-002142-26 |
| EMR ADVANCED RECYCLING, LLC, | **NOTICE OF MOTION TO ADMIT MATTHEW Z. ROBB, ESQ.** *PRO HAC VICE* |
| Defendant. | |

**PLEASE TAKE NOTICE**, that on July 17, 2026 at 9:00 a.m. in the forenoon or as soon thereafter as counsel may be heard, the undersigned, attorney for the Plaintiff, shall apply to the Court for an Order to admit *pro hac vice* Matthew Z. Robb, Esq. to act as lead counsel in this particular case with the assistance of licensed New Jersey attorney Kevin S. Riechelson.

**PLEASE TAKE FURTHER NOTICE** that plaintiff shall rely upon the enclosed certification of Matthew Z. Robb, Esq.

Pursuant to R. 1:6-2, the undersigned waives oral argument and consents to disposition on papers.

**Date: June 22, 2026**

*Kevin Riechelson*
Kevin S. Riechelson, Esq.

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that the within Notice of Motion to Admit Matthew Z. Robb, Esq. *Pro Hac Vice* was sent for filing with the Clerk of Camden County via electronic filing.  I further certify that copies of the Notice and all supporting papers were served via electronic filing and email upon all known attorneys of record, and certified and regular mail to all parties not on ecourts.

**COHEN & RIECHELSON**
Attorney for Plaintiff

Dated: June 22, 2026          By:    *Kevin Riechelson*

                                      Kevin S. Riecheslon, Esq.

**COHEN & RIECHELSON**
**BY: KEVIN S. RIECHELSON**
**I.D.#: 0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

|  |  |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION |
| Plaintiff, | CIVIL ACTION |
| vs. | DOCKET NUMBER: CAM L-002142-26 |
| EMR ADVANCED RECYCLING, LLC, | **ORDER** |
| Defendant. | |

**THIS MATTER** having come before the Court upon application by Kevin S. Riechelson, Esq., attorney for plaintiff, and the Court having reviewed the moving papers and opposition submitted, if any, and for good cause having been shown:

**IT IS** on this _____ day of _____, 2026;

**ORDERED** that attorney Matthew Z. Robb, Esq. is hereby appointed *pro hac vice* to act as trial counsel in the above matter; the Plaintiffs in this matter, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Mr. Robb represents them as lead counsel in this matter; it is further,

**ORDERED** that attorney Matthew Z. Robb, Esq. shall abide by the New Jersey Rules of Court, including all disciplinary rules; and it is further

**ORDERED** that attorney Matthew Z. Robb, Esq. consent to the appointment of the Clerk of the Superior Court as agent upon whom service of process may be made for all actions against him or his law firm that may arise out of their participation in this matter; and it is further

**ORDERED** that attorney Matthew Z. Robb, Esq. shall notify the court immediately of any matter affecting his standing at the bar of any other court; and it is further

**ORDERED** that attorney Matthew Z. Robb, Esq. shall have all pleadings, briefs and other papers filed with the court signed by Kevin S. Richelson, Esq., as the attorney of record who is authorized to practice in this State, and who shall be held responsible for him and for the conduct of the cause and of attorney Kevin S. Riechelson; and it is further

**ORDERED** that a copy of this Order be served upon all counsel of record within _____ days of the date hereof.

_____
Hon. _____, J.S.C.

_____ Opposed

_____ Unopposed

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**CERTIFICATION OF MATTHEW Z. ROBB** |

1.     I am Matthew Z. Robb , an attorney at law in the State of Michigan (P81665), where I am domiciled and principally practice law. I submit this Certification in support of the motion requesting my admission *pro hac vice* to act as counsel pursuant to R. 1:21-2, to represent Plaintiffs Sandra Wiles, Celestine Wallace and Deandra Smith in the above-captioned action.  I have full knowledge of the facts set forth herein.

2.     I am a licensed attorney in the State of Michigan, and I am a member in good standing of the State Bar of Michigan, the bar of the highest court in the State of Michigan.

3.     I am associated in this matter with Kevin Riechelson, Esq. (N.J. ID.#0201391990), of Cohen & Riechelson, who is New Jersey counsel of record and qualified to practice in the State

1

of New Jersey pursuant to R. 1:21-1. I, and my firm, will continue to be associated with Mr. Riechelson and his firm throughout the matter.

4. The Plaintiffs, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that I and my firm of Liddle Sheets P.C. ("LS") in Detroit, Michigan, represent them in this matter.

5. No disciplinary proceedings are pending against me in any jurisdiction, and no discipline has previously been imposed against me in any jurisdiction.

6. I understand that, if admitted *pro hac vice*, I have the continuing obligation during the period of my admission regarding the institution of any new disciplinary proceedings that may arise.

7. The above captioned case is a proposed class action alleging that the Defendant's recycling facility emits, and continues to emit, widespread noxious odors that have impacted numerous neighboring residents' property rights.

8. I and my firm devote the vast majority our legal practice to litigating class actions. Specifically, I and LS devote a substantial majority of our practice to litigating similarly complex class actions involving allegations of noxious air pollution from industrial facilities that adversely impact the property rights of neighboring residents.

9. I and my firm have extensive experience in this type of litigation, which is a niche area of law. I and the other attorneys at LS are among the few, if any, practitioners nationwide that devote such a significant portion of our practice to this type of case. It is my belief that there is a lack of local counsel with adequate expertise in the niche field of law involved in this case.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

2

Dated: 6/19/26

_____

Matthew Z. Robb, Esq.

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**CERTIFICATION OF KEVIN S. RIECHELSON IN SUPPORT OF MOTION TO ADMIT MATTHEW Z. ROBB *PRO HAC VICE*** |

1.      I am Kevin Riechelson, an attorney at law in the State of New Jersey and I represent Plaintiffs Sandra Wiles, Celestine Wallace and Deandra Smith in the above-captioned action.  As attorney of record from the inception of this action, I have full knowledge of the facts set forth below.

2.      I am a licensed attorney in the State of New Jersey, and I am qualified to practice pursuant to R. 1:21-1.

3.      I submit this Certification in support of my firm's motion requesting that Matthew Z. Robb, Esq. be admitted *pro hac vice* to act as counsel in the above-captioned case pursuant to

1

R. 1:21-2. I have consulted with Mr. Robb about the circumstances surrounding this matter. Accordingly, he is familiar with the facts of this case.

4.    The Plaintiffs, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Mr. Robb's firm of Liddle Sheets P.C. ("LS"), a class action law firm located in Detroit, Michigan, represent them as lead counsel in this matter.

5.    Mr. Robb is associated with I and my firm in this matter and will continue to be associated with I and my firm throughout the matter.

6.    Mr. Robb is domiciled in the state of Michigan. Mr. Robb is an attorney in good standing of the State Bar of Michigan, the highest court of the state in which Mr. Robb is domiciled and practices law.

7.    No disciplinary proceedings are pending against Mr. Robb in any jurisdiction, and no discipline has previously been imposed against Mr. Robb in any jurisdiction.

8.    The above captioned case is a proposed class action alleging that the Defendant's recycling facility emits, and continues to emit, widespread noxious odors that have impacted numerous neighboring residents' property rights. It is my belief that this complex case is outside of the ken of most civil practitioners and requires knowledgeable and experienced attorneys in this niche field of practice.

9.    LS and Mr. Robb devote their practice to litigating class actions. Specifically, LS and Mr. Robb devote a substantial majority of their practice to litigating similarly complex class actions involving allegations of noxious air pollution from industrial facilities that adversely impact the property rights of neighboring residents.

10.    Mr. Robb and his firm have extensive experience in this type of litigation, which is a niche area of law. Mr. Robb and the attorneys at LS are among the few, if any, practitioners

2

nationwide that devote such a significant portion of their practice to this type of case. It is my belief that there is a lack of local counsel with adequate expertise in the niche field of law involved in this case.

11.     Mr. Robb's involvement at this point in the case is crucial so that LS can participate in the discovery process, class certification proceedings, and then the trial of this matter.

12.     Accordingly, Plaintiff respectfully requests that this motion be granted so that he may be represented by experienced counsel of their choice.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date:   **June 22, 2026**                                    *Kevin Riechelson*

                                            Kevin S. Riechelson, Esq.

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH |
| Defendant Name: | EMR ADVANCED RECYCLING, LLC |
| Case Caption: | WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC |
| Case Number: | CAM L 002142-26 |
| Docket Text: | The motion filed on 06/22/2026 will be decided on 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE LCV20261657981 |
| Transaction ID: | LCV20261679142 |

**Notice has been electronically mailed to:**

| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |
|---|---|---|
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |

**Notice was not electronically mailed to:**

| Defendant | EMR ADVANCED RECYCLING, LLC | 201 N. FRONT STREET, CAMDEN, NJ 08102 |
|---|---|---|

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH |
| Defendant Name: | EMR ADVANCED RECYCLING, LLC |
| Case Caption: | WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC |
| Case Number: | CAM L 002142-26 |
| Docket Text: | The motion filed on 06/22/2026 will be decided on 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE LCV20261658020 |
| Transaction ID: | LCV20261679151 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | EMR ADVANCED RECYCLING, LLC | 201 N. FRONT STREET, CAMDEN, NJ 08102 |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH |
| Defendant Name: | EMR ADVANCED RECYCLING, LLC |
| Case Caption: | WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC |
| Case Number: | CAM L 002142-26 |
| Docket Text: | The motion filed on 06/22/2026 will be decided on 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE LCV20261658046 |
| Transaction ID: | LCV20261679188 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | EMR ADVANCED RECYCLING, LLC | 201 N. FRONT STREET, CAMDEN, NJ 08102 |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH |
| Defendant Name: | EMR ADVANCED RECYCLING, LLC |
| Case Caption: | WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC |
| Case Number: | CAM L 002142-26 |
| Docket Text: | The motion filed on 06/22/2026 was rescheduled to 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE LCV20261657981 |
| Transaction ID: | LCV20261687917 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM AACOSTA@CRLAWOFFICES.COM JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM AACOSTA@CRLAWOFFICES.COM JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM AACOSTA@CRLAWOFFICES.COM JHEARN@CRLAWOFFICES.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | EMR ADVANCED RECYCLING, LLC | 201 N. FRONT STREET, CAMDEN, NJ 08102 |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH |
| Defendant Name: | EMR ADVANCED RECYCLING, LLC |
| Case Caption: | WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC |
| Case Number: | CAM L 002142-26 |
| Docket Text: | The motion filed on 06/22/2026 was rescheduled to 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE LCV20261658020 |
| Transaction ID: | LCV20261687923 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | EMR ADVANCED RECYCLING, LLC | 201 N. FRONT STREET, CAMDEN, NJ 08102 |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH |
| Defendant Name: | EMR ADVANCED RECYCLING, LLC |
| Case Caption: | WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC |
| Case Number: | CAM L 002142-26 |
| Docket Text: | The motion filed on 06/22/2026 was rescheduled to 07/17/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION FOR ADMISSION PRO HAC VICE LCV20261658046 |
| Transaction ID: | LCV20261687932 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM<br>AACOSTA@CRLAWOFFICES.COM<br>JHEARN@CRLAWOFFICES.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | EMR ADVANCED RECYCLING, LLC | 201 N. FRONT STREET, CAMDEN, NJ 08102 |

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>ACCEPTANCE OF SERVICE AND APPEARANCE |

The undersigned attorney hereby accepts service of the Summons and Complaint in the above-captioned matter on behalf of Defendant, EMR ADVANCED RECYCLING, LLC.

Acceptance of service is made solely as a convenience to the parties and shall not constitute a waiver of any defenses, objections, rights, or arguments that Defendant may have. Defendant expressly reserves all such defenses, objections, rights, and arguments.

MANKO, GOLD, KATCHER & FOX

BY:  _____
KATHLEEN B. CAMPBELL, ESQ.
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
484-430-2316
kcampbell@makogold.com

DATE:   July 6, 2026

|  |  |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> EMR ADVANCED RECYCLING, LLC, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION <br><br><br> DOCKET NO. CAM L-002142-26 <br><br> **ENTRY OF APPEARANCE OF KATHLEEN CAMPBELL** |

PLEASE TAKE NOTICE that Kathleen Campbell, an attorney at the law firm of Manko, Gold, Katcher & Fox, LLP, and a member of this Court in good standing, enters her appearance in the above-captioned matter as co-counsel for Defendant EMR Advanced Recycling, LLC.

Respectfully submitted,


*/s/ Kathleen Campbell*
Kathleen B. Campbell, Esq. (No. 030102003)
MANKO, GOLD, KATCHER & FOX LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
kcampbell@mankogold.com
Telephone: (484) 430-5700
Fax: (484) 430-5711

*Counsel for Defendant*
*EMR Advanced Recycling, LLC*

Dated: July 9, 2026

4143956_1

## CERTIFICATE OF SERVICE

I, Kathleen Campbell, hereby certify that a true and correct copy of the foregoing

was served by electronic filing upon all counsel of record.


/s/ Kathleen Campbell
Kathleen B. Campbell, Esq. (No. 030102003)
MANKO, GOLD, KATCHER & FOX LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
kcampbell@mankogold.com
Telephone: (484) 430-5700
Fax: (484) 430-5711


*Counsel for Defendant*
*EMR Advanced Recycling, LLC*


Dated: July 9, 2026

|  |  |  |
|---|---|---|
| SANDRA WILES,<br>CELESTINE WALLACE, and<br>DEANDRA SMITH, on behalf of<br>themselves and all others similarly situated, | : <br> : <br> : <br> : <br> : | SUPERIOR COURT OF NEW JERSEY<br>CAMDEN COUNTY – CIVIL<br>DIVISION |
|  Plaintiffs, | : <br> : <br> : | |
| v. | : <br> : | DOCKET NO. CAM L-002142-26 |
| EMR ADVANCED RECYCLING, LLC, | : <br> : <br> : | **ENTRY OF APPEARANCE OF<br>MICHAEL DILLON** |
|  Defendant. | : | |

PLEASE TAKE NOTICE that Michael Dillon, an attorney at the law firm of Manko,

Gold, Katcher & Fox, LLP, and a member of this Court in good standing, enters his appearance

in the above-captioned matter as co-counsel for Defendant EMR Advanced Recycling, LLC.

Respectfully submitted,

*/s/ Michael Dillon*

Michael Dillon, Esq. (No. 023382012)
MANKO, GOLD, KATCHER & FOX LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
mdillon@mankogold.com
Telephone: (484) 430-5700
Fax: (484) 430-5711

*Counsel for Defendant*
*EMR Advanced Recycling, LLC*

Dated: July 9, 2026

4143955_1

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Dillon, hereby certify that a true and correct copy of the foregoing was served by electronic filing upon all counsel of record.

> */s/ Michael Dillon*
> Michael Dillon, Esquire
> MANKO, GOLD, KATCHER & FOX LLP
> Three Bala Plaza East, Suite 700
> Bala Cynwyd, PA 19004
> mdillon@mankogold.com
> Telephone: (484) 430-5700
> Fax: (484) 430-5711
>
> *Counsel for Defendant*
> *EMR Advanced Recycling, LLC*

Dated: July 9, 2026

|  |  |  |
|---|---|---|
| SANDRA WILES, | : | SUPERIOR COURT OF NEW JERSEY |
| CELESTINE WALLACE, and | : | CAMDEN COUNTY – CIVIL |
| DEANDRA SMITH, on behalf of | : | DIVISION |
| themselves and all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | DOCKET NO. CAM L-002142-26 |
| | : | |
| EMR ADVANCED RECYCLING, LLC, | : | **ENTRY OF APPEARANCE OF** |
| | : | **DANIELLE BAGWELL** |
| Defendant. | : | |

PLEASE TAKE NOTICE that Danielle Bagwell, an attorney at the law firm of Manko, Gold, Katcher & Fox, LLP, and a member of this Court in good standing, enters her appearance in the above-captioned matter as co-counsel for Defendant EMR Advanced Recycling, LLC.

Respectfully submitted,

*/s/ Danielle Bagwell*
Danielle N. Bagwell, Esq. (No. 29192010)
MANKO, GOLD, KATCHER & FOX LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
dbagwell@mankogold.com
Telephone: (484) 430-5700
Fax: (484) 430-5711

*Counsel for Defendant*
*EMR Advanced Recycling, LLC*

Dated: July 9, 2026

4143961_1

## CERTIFICATE OF SERVICE

I, Danielle Bagwell, hereby certify that a true and correct copy of the foregoing was served by electronic filing upon all counsel of record.

*/s/ Danielle Bagwell*
Danielle N. Bagwell, Esq. (No. 29192010)
MANKO, GOLD, KATCHER & FOX LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
dbagwell@mankogold.com
Telephone: (484) 430-5700
Fax: (484) 430-5711

*Counsel for Defendant*
*EMR Advanced Recycling, LLC*

Dated: July 9, 2026

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following clerk notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | SANDRA WILES, CELESTINE WALLACE, DEANDRA SMITH |
| Defendant Name: | EMR ADVANCED RECYCLING, LLC |
| Case Caption: | WILES SANDRA  VS EMR ADVANCED RECYCLI NG, LLC |
| Case Number: | CAM L 002142-26 |
| Docket Text: | CLERK NOTICE: re: NOTICE OF APPEARANCE (NOT THE FIRST PAPER) LCV20261811194 -Please be advised that your collateral account has been charged $175 pursuant to NJ Court Rule 1:43, as this is a first paper for Defendant. Thank you |
| Transaction ID: | LCV20261838750 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |
| Plaintiff Attorney | KEVIN S RIECHELSON | KRIECHELSON@CRLAWOFFICES.COM |
| | | AACOSTA@CRLAWOFFICES.COM |
| | | JHEARN@CRLAWOFFICES.COM |
| Defendant Attorney | DANIELLE N BAGWELL | DBAGWELL@MANKOGOLD.COM |
| | | BDEVLIN@MANKOGOLD.COM |
| | | WSTEVENSON@MANKOGOLD.COM |

**Notice was not electronically mailed to:**

Login to eCourts to view the Case Jacket. You will need a valid user ID (Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

*84*

*ORDER*

**COHEN & RIECHELSON**
**BY:   KEVIN S. RIECHELSON**
**I.D.#: 0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> EMR ADVANCED RECYCLING, LLC, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION <br><br> CIVIL ACTION <br><br> DOCKET NUMBER: CAM L-002142-26 <br><br> **ORDER** |

**THIS MATTER** having come before the Court upon application by Kevin S. Riechelson, Esq., attorney for plaintiff, and the Court having reviewed the moving papers and opposition submitted, if any, and for good cause having been shown:

IT IS on this ___17___ day of ___July___, 2026;

**ORDERED** that attorney Matthew Z. Robb, Esq. is hereby appointed *pro hac vice* to act as trial counsel in the above matter; the Plaintiffs in this matter, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Mr. Robb represents them as lead counsel in this matter; it is further,

**ORDERED** that attorney Matthew Z. Robb, Esq. shall abide by the New Jersey Rules of Court, including all disciplinary rules; and it is further

**ORDERED** that attorney Matthew Z. Robb, Esq. consent to the appointment of the Clerk of the Superior Court as agent upon whom service of process may be made for all actions against him or his law firm that may arise out of their participation in this matter; and it is further

**ORDERED** that attorney Matthew Z. Robb, Esq. shall notify the court immediately of any matter affecting his standing at the bar of any other court; and it is further

**ORDERED** that attorney Matthew Z. Robb, Esq. shall have all pleadings, briefs and other papers filed with the court signed by Kevin S. Richelson, Esq., as the attorney of record who is authorized to practice in this State, and who shall be held responsible for him and for the conduct of the cause and of attorney Kevin S. Riechelson; and it is further

**ORDERED** that a copy of this Order be served upon all counsel of record within _____ days of the date hereof.

_____
Hon. _____, J.S.C.

Michael J. Kassel, J.S.C.

7/15/2026

~~Opposed~~

X Unopposed

Reasons
on
Record

85
ORDER

**COHEN & RIECHELSON**
**BY:    KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>CAMDEN COUNTY – CIVIL<br>DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**ORDER** |

**THIS MATTER** having come before the Court upon application by Kevin S. Riechelson, Esq., attorney for plaintiff, and the Court having reviewed the moving papers and opposition submitted, if any, and for good cause having been shown:

IT IS on this __17__ day of ___July___, 2026;

**ORDERED** that attorney Laura L. Sheets, Esq. is hereby appointed *pro hac vice* to act as trial counsel in the above matter; the Plaintiffs in this matter, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Ms. Sheets represents them as lead counsel in this matter; it is further,

**ORDERED** that attorney Laura L. Sheets, Esq. shall abide by the New Jersey Rules of Court, including all disciplinary rules; and it is further

**ORDERED** that attorney Laura L. Sheets, Esq. consents to the appointment of the Clerk of the Superior Court as agent upon whom service of process may be made for all actions against her or her law firm that may arise out of their participation in this matter; and it is further

**ORDERED** that attorney Laura L. Sheets, Esq. shall notify the court immediately of any matter affecting her standing at the bar of any other court; and it is further

**ORDERED** that attorney Laura L. Sheets, Esq. shall have all pleadings, briefs and other papers filed with the court signed by Kevin S. Richelson, Esq., as the attorney of record who is authorized to practice in this State, and who shall be held responsible for her and for the conduct of the cause and of attorney Kevin S. Riechelson; and it is further

**ORDERED** that a copy of this Order be served upon all counsel of record within _____ days of the date hereof.

Hon. _____ , J.S.C.

_____ Opposed

__X__ Unopposed

Michael J. Kassel, J.S.C.

7/15/2026

Reasons
on
Record

*86*
*ORDER*

**COHEN & RIECHELSON**
**BY:    KEVIN S. RIECHELSON**
**I.D.#:  0201391990**
**3500 Quakerbridge Road, Suite 203**
**Hamilton, New Jersey, 08619**
**Tel: (609) 394-8585| Fax: (609) 394-8620**
**KRiechelson@crlawoffices.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMR ADVANCED RECYCLING, LLC,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY – CIVIL DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NUMBER: CAM L-002142-26<br><br>**ORDER** |

**THIS MATTER** having come before the Court upon application by Kevin S. Riechelson, Esq., attorney for plaintiff, and the Court having reviewed the moving papers and opposition submitted, if any, and for good cause having been shown:

IT IS on this __17__ day of ___July___, ~~2025~~ 2026;

**ORDERED** that attorney Steven D. Liddle, Esq. is hereby appointed *pro hac vice* to act as trial counsel in the above matter; the Plaintiffs in this matter, Sandra Wiles, Celestine Wallace and Deandra Smith, have requested that Mr. Liddle represents them as lead counsel in this matter; it is further,

**ORDERED** that attorney Steven D. Liddle, Esq. shall abide by the New Jersey Rules of Court, including all disciplinary rules; and it is further

**ORDERED** that attorney Steven D. Liddle, Esq. consents to the appointment of the Clerk of the Superior Court as agent upon whom service of process may be made for all actions against him or his law firm that may arise out of their participation in this matter; and it is further

**ORDERED** that attorney Steven D. Liddle, Esq. shall notify the court immediately of any matter affecting his standing at the bar of any other court; and it is further

**ORDERED** that attorney Steven D. Liddle, Esq. shall have all pleadings, briefs and other papers filed with the court signed by Kevin S. Richelson, Esq., as the attorney of record who is authorized to practice in this State, and who shall be held responsible for him and for the conduct of the cause and of attorney Kevin S. Riechelson; and it is further

**ORDERED** that a copy of this Order be served upon all counsel of record within _____ days of the date hereof.

Hon. _____ , J.S.C.

_____ Opposed

_____ Unopposed

Michael J. Kassel, J.S.C.

7/18/2026

Reasons
on
Record